1   MORGAN, LEWIS & BOCKIUS LLP
    Eric Meckley, Bar No. 168181
2   eric.meckley@morganlewis.com
    One Market
3   Spear Street Tower
    San Francisco, CA 94105-1596
4   Tel:    +1.415.442.1000
    Fax:    +1.415.442.1001
5
    MORGAN, LEWIS & BOCKIUS LLP
6   Nancy Villarreal, Bar No. 273604
    nancy.villarreal@morganlewis.com
7   1400 Page Mill Road
    Palo Alto, CA 94304
8   Tel:    +1.650.843.4000
    Fax:    +1.650.843.4001
9
    Attorneys for Defendants
10  GOLDEN STATE FC LLC
    and AMAZON.COM LLC
11

12                          UNITED STATES DISTRICT COURT

13                         NORTHERN DISTRICT OF CALIFORNIA

14

15  MICHAEL ORTIZ, on behalf of himself and      Case No. 4:17-CV-03820-JSW
    all others similarly situated,
16                                               **NOTICE OF MOTION AND MOTION
                                                 OF DEFENDANTS GOLDEN STATE
17                                               FC LLC AND AMAZON.COM LLC
                                                 FOR SUMMARY JUDGMENT, OR,
18                  Plaintiff,                   IN THE ALTERNATIVE, PARTIAL
                                                 SUMMARY JUDGMENT**
19          vs.

20                                               **MEMORANDUM OF POINTS AND
    AMAZON.COM LLC, a Delaware Limited           AUTHORITIES IN SUPPORT
21  Liability Company; GOLDEN STATE FC           THEREOF**
    LLC, a Delaware Limited Liability
22  Company, and DOES 1 through 100,             Date:      March 29, 2019
    inclusive,                                   Time:      9:00 a.m.
23                                               Courtroom: 5, 2nd Floor
                                                 Judge:     Honorable Jeffrey S. White
24
                    Defendants.
25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE AND MSJ
OR, IN THE ALTERNATIVE, MPSJ
CASE NO. 4:17-cv -03820-JSW

**PLEASE TAKE NOTICE** that on March 29, 2019 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 5 of the above-referenced court, located at 1301 Clay Street, Oakland, California 94612, Defendants Golden State FC and Amazon.com LLC ("Defendants") will, and hereby do, move this Court for an order granting summary judgment in favor of Defendants and against Plaintiff Michael Ortiz ("Ortiz"). Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Northern District Local Rule 56, Defendants move as follows:

1. Ortiz's First Claim for Relief for failure to pay overtime wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, and Second Claim for Relief for failure to pay minimum wages under the FLSA, 29 U.S.C. § 206, fail as a matter of law because it is undisputed that Ortiz meets all of the elements of the executive exemption under the FLSA, and therefore is not entitled to overtime or minimum wages. 29 CFR § 541.100. Alternatively, Ortiz's Second Claim for Relief fails as a matter of law because Ortiz was compensated at least minimum wage for each hour worked. *See Douglas v. Xerox Business Services, LLC*, 875 F.3d 884 (9th Cir. 2017).

2. Ortiz's Third Claim for Relief for failure to pay overtime wages under "IWC Wage Order" and California Labor Code §§ 510, 1194 and 1198 fails as a matter of law because it is undisputed that Ortiz meets all of the elements of the executive exemption under the California Industrial Welfare Commission Wage Order 7-2001, and therefore is not entitled to overtime pay. 8 Cal. Code Regs. ("CCR") § 11070.

3. Ortiz's Fourth Claim for Relief for failure to provide meal and rest periods under California Labor Code §§ 226.7 and 512 fails as a matter of law because such claim is derivative of his misclassification claim and it is undisputed that Ortiz meets all of the elements of the executive exemption under California Industrial Welfare Commission Wage Order 7-2001, and therefore was not entitled to meal and rest periods.

4. Ortiz's Fifth Claim for Relief for failure to provide accurate itemized wage statements under California Labor Code §§ 226 and 1174 fails as a matter of law because such claim is derivative of his misclassification claim and it is undisputed that Ortiz meets all of the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  elements of the executive exemption under California Industrial Welfare Commission Wage

2  Order 7-2001, and therefore received compliant wage statements.

3       5.      Ortiz's Sixth Claim for Relief for failure to pay wages on termination under

4  California Labor Code § 203 fails as a matter of law because such claim is derivative of his

5  misclassification claim and it is undisputed that Ortiz meets all of the elements of the

6  exemption under California Industrial Welfare Commission Wage Order 7-2001, and therefore

7  was paid all wages on termination.  8 CCR § 11070.

8       6.      Ortiz's Seventh Claim for Relief for unfair business practices under the Unfair

9  Competition Law, California Business & Professions Code §§ 17200-17208 fails as a matter of

10 law because such claim is derivative of his misclassification claim and it is undisputed that Ortiz

11 meets all of the elements of the executive exemption under California Industrial Welfare

12 Commission Wage Order 7-2001, and therefore, there is no underlying unlawful practice that

13 would support a UCL claim.

14      7.      Ortiz's Eighth Claim for Relief under the Private Attorneys General Act,

15 California Labor Code § 2699, fails as a matter of law because such claim is derivative of his

16 misclassification claim and it is undisputed that Ortiz meets all of the elements of the executive

17 exemption under California Industrial Welfare Commission Wage Order 7-2001, and therefore

18 was not an "aggrieved employee" under the PAGA.

19      This Motion is based upon the accompanying Memorandum of Points & Authorities, the

20 Declarations of Eric Meckley, Amanda Murrow, and Marc Lopez, and all of the exhibits attached

21 thereto, the pleadings and the Court's records on file herein, and on such other and further

22 argument and evidence as may be presented at or prior to the time of the hearing, and all matters

23 of which this Court may properly take notice.

24  Dated: February 22, 2019              MORGAN, LEWIS & BOCKIUS LLP

25
                                        By    /s/ Eric Meckley
26                                           _____
                                             ERIC MECKLEY
27                                           NANCY VILLARREAL
                                             Attorneys for Defendants
28                                           GOLDEN STATE FC LLC and
                                             AMAZON.COM LLC

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

                        2            DEFENDANTS' NOTICE AND MSJ
                                     OR, IN THE ALTERNATIVE, MPSJ
                                     CASE NO. 4:17-cv -03820-JSW

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT ............................................................................... 1

II. INTRODUCTION ............................................................................................... 2

III. STATEMENT OF RELEVANT FACTS ............................................................ 3

    A. Ortiz Was Paid Nearly $70,000 A Year To Manage Operations In Golden State's Complex Delivery Stations. .......................................................... 3

    B. Ortiz Used His Discretion And Judgment To Manage A Team of Up to 100 Associates. ........................................................................................ 4

        1. Ortiz Continuously Monitored, Directed And Reassigned The Work Of A Team Of 80 to 100 Associates. ......................................... 4

        2. Ortiz Launched Facilities, Identified Ways To Improve Operational Efficiency, And Continuously Analyzed Performance Metrics. ............... 6

    C. Ortiz Disciplined and Terminated Associates, Made Recommendations Regarding Promotions and Had the Authority to Make Recommendations Regarding Hiring. ......................................................................................... 8

IV. ARGUMENT ..................................................................................................... 9

    A. The Court Should Grant Summary Judgment On Ortiz's California Overtime Claim Because Ortiz Was Exempt From Overtime Requirements Under the Executive Exemption. .................................................................. 9

        1. Ortiz Managed a Customarily Recognized Department or Subdivision. ............................................................................... 9

        2. Ortiz Directed the Work of Two or More Associates. ............................ 10

        3. Ortiz Made Suggestions, Recommendations and Decisions on Discipline, Terminations, and Promotions and Could Make Recommendations Regarding Hiring. ............................................... 11

        4. Ortiz Exercised Discretion and Independent Judgment When Performing His Management Responsibilities. ........................................ 12

        5. Ortiz Was Primarily Engaged In Exempt Duties. .................................... 15

        6. Ortiz's Salary Was More Than Double California's Minimum Wage. .......................................................................................... 19

    B. The Court Should Grant Summary Judgment On Ortiz's Unpaid Overtime and Minimum Wage Claims Under the FLSA Because Ortiz Was Properly Classified as Exempt Under the Executive Exemption. ....................................... 19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANTS' MSJ, OR, IN THE
ALTERNATIVE, MPSJ
CASE NO. 4:17-cv -03820-JSW

C.    Alternatively, Ortiz's Minimum Wage Claim Under the FLSA Fails
      Because He Was Compensated Above Minimum Wage For Every Hour
      Worked....................................................................................................... 21

D.    The Court Should Grant Summary Judgment On Ortiz's Remaining Claims
      Because They Are Premised Entirely Upon His Being A Non-Exempt
      Employee.................................................................................................... 21

V.    CONCLUSION ............................................................................................ 22

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANTS' MSJ
Case No. 3:15-cv-02277-JST

ii

**CASES**

*Abdullah v. U.S. Sec. Associates, Inc.*,
731 F.3d 952 (9th Cir. 2013) ................................................................................................ 17

*Allen v. Centillium Commc'ns., Inc.*,
No. C-06-06153 (EDL), 2008 WL 916976 (N.D. Cal. Apr. 3, 2008) ....................................... 6

*Baldwin v. Trailer Inns, Inc.*,
266 F.3d 1104 (9th Cir. 2001) ................................................................................... 10, 14, 18

*Banuelos v. UPS Ground Freight, Inc.*,
CV 15-2408 PA (AJWx), 2016 WL 47259 (C.D. Cal. Jan. 4, 2016) ..................................... 13

*Batze v. Safeway, Inc.*,
10 Cal. App. 5th 440 (2017) ...................................................................... i, 1, 9, 17, 18

*Boyce v. Independent Brewers United Corp.*,
No. 15-cv-02263-YGR, 2017 WL 2377107 (N.D. Cal. June 1, 2017) ........................ 9, 10, 12

*Combs v. Skyriver Communications, Inc.*,
159 Cal. App. 4th 1242 (2008) ................................................................................................ 6

*Copas v. East Bay Municipal Utility Dist.*,
61 F. Supp. 2d 1017 (N.D. Cal. 1999) .............................................................................. 13, 19

*Douglas v. Xerox Business Services, LLC*,
875 F.3d 884 (9th Cir. 2017) ........................................................................................... i, 20

*Guiltoyle v. Dollar Tree Stores, Inc.*,
No. 12-cv-00703-GEB-CKD, 2014 WL 66740 (E.D. Cal., Jan. 8, 2014) .............................. 11

*Musgraves v. Sears Holding Management Corp.*,
No. CV-11-0625 GAF, 2012 WL 3222905 (C.D. Cal. July 19, 2012) ................................... 16

*Nordquist v. McGraw-Hill Broadcasting Co.*,
32 Cal. App. 4th 555 (1995) .................................................................................................. 13

*Patel v. Nike Retail Services, Inc.*,
Case No. 14-cv-04781-RS, 2016 WL 1241777 (N.D. Cal. Mar. 29, 2016) ..................... 11, 12

*Pendoza v. PetSmart, Inc.*,
No. ED CV 11-298-GHK, 2012 WL 9506073 (C.D. Cal., June 14, 2012) ............................ 14

*Price v. Starbucks*,
192 Cal. App. 4th 1136 (2011) .............................................................................................. 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANTS' MSJ, OR, IN THE
ALTERNATIVE, MPSJ
CASE NO. 4:17-cv -03820-JSW

*Ramirez v. Yosemite Water Co.*,
    20 Cal. 4th 785 (2010) .........................................................................................14

*Taylor v. United Parcel Serv., Inc.*,
    190 Cal. App. 4th 1001 (2010)................................................. i, 9, 12, 13, 15, 20

*Wilbur v. Silgan Containers Corp.*,
    No. 2:06-cv-02181-MCE-EFB, 2008 WL 3863700 (E.D. Cal. Aug. 19, 2008) 6, 10, 11, 13, 14,
    15, 16, 21

**STATUTES**

Fair Labor Standards Act (FLSA) .................................................. i, 1, 2, 14, 18, 19, 20

Private Attorneys' General Act (PAGA) ........................................................ i, 2, 20, 21

**REGULATIONS**

29 C.F.R.
    § 541.100..................................................................................................................19
    § 541.100(a) .............................................................................................................19
    § 541.102...........................................................................................................9, 14, 15
    § 541.103(b) .............................................................................................................19
    § 541.104-111 ...........................................................................................................14
    § 541.105............................................................................................................10, 19
    § 541.106(a) .............................................................................................................17
    § 541.115-116 ...........................................................................................................14
    § 541.700(a)-(b) ..................................................................................................18, 19
    § 778.109..................................................................................................................20

8 CCR
    § 11070.................................................................................................................1, 8
    § 11070(1) ..........................................................................................9, 10, 11, 14, 18

California Wage Order 7-2001....................................................................... i, 1, 18

Department of Labor, Wage and Hour Division, History of Federal Minimum
    Wage Rates Under the Fair Labor Standards Act, 1938-2009, *available at*
    https://www.dol.gov/whd/minwage/chart.htm.......................................................20

DLSE Enforcement Policies and Interpretation Manual,
    § 53.5.1....................................................................................................................10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANTS' MSJ
Case No. 3:15-cv-02277-JST

**OTHER AUTHORITIES**

California Labor Commissioner, Division of Labor Standards Enforcement
("DLSE") Opinion Letter, "Exemption: Executive, Applicability of Federal
caselaw," at p. 6 (July 6, 1993) *available at*
https://www.dir.ca.gov/dlse/opinions/1993-07-06.pdf ...........................................................16

*California Minimum Wage*, State of Cal. Dept. of Indus. Relations,
https://www.dir.ca.gov/iwc/MinimumWageHistory.htm .......................................................18

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANTS' MSJ
Case No. 3:15-cv-02277-JST

# I. SUMMARY OF ARGUMENT

Defendant Golden State FC LLC ("Golden State" or the "Company") paid Plaintiff Michael Ortiz ("Ortiz") nearly $70,000 a year to manage, on his own, the night sort operations of its Delivery Stations. As a Level 4 Manager, Logistics, Ortiz made real-time and unilateral decisions on labor allocation and performance management for a team of at least 80 (and up to 100) Golden State employees, referred as "associates," created and implemented operational improvements, used his independent judgment and discretion to problem solve on a daily basis in the face of changing business needs and made recommendations and decisions on discipline, termination and promotion. Ortiz also developed new processes for the Company and helped launch two Delivery Stations in the Bay Area and improve a third Delivery Station that was struggling. These undisputed facts easily satisfy the executive exemption of California Wage Order 7-2001 and the Fair Labor Standards Act (FLSA), and thus, his claims for unpaid overtime and minimum wage (Counts I-III) fail.

Yet, Ortiz claims he was misclassified because he also performed non-exempt manual tasks. But this contention cannot stave off summary judgment. Aside from the fact that his job did not require such work, Ortiz admittedly worked alongside associates to *continuously* observe and assess their performance throughout his shift. These observations, in turn, allowed Ortiz to make operational decisions designed to maximize the performance of his department – such as labor allocations, job assignments, coaching and additional training. Any manual work that Ortiz performed, therefore, was directly and closely related to his exempt duties – meaning that such work was exempt as well. *See Batze v. Safeway, Inc.,* 10 Cal. App. 5th 440, 480-481 (2017).

Alternatively, Ortiz's minimum wage claim under the FLSA (Count II) fails because he was paid far in excess of minimum wage for all hours worked. *Douglas v. Xerox Business Services, LLC*, 875 F.3d 884 (9th Cir. 2017). Ortiz's remaining derivative state law claims for failure to provide meal and rest periods, failure to provide accurate itemized wage statements, waiting time penalties, unfair business practices, and his claim under the Private Attorneys' General Act (PAGA) (Counts IV-VIII) fail because Ortiz was properly classified as exempt. *Taylor v. United Parcel Serv., Inc.*, 190 Cal. App. 4th 1001, 1013-14 (2010).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT'S NOTICE AND MSJ
Case No. 3:15-cv-02277-JST

## II.    INTRODUCTION

Golden State paid Ortiz nearly $70,000 a year to manage, on his own, the night sort operations of its Delivery Stations.[1]  As a Level 4 Manager, Logistics, Ortiz made dynamic and unilateral decisions on labor allocation and performance management for a team of at least 80 (and up to 100) Golden State employees, referred as "associates," used his independent judgment and discretion to problem solve on a daily basis in the face of changing business needs and made recommendations and decisions on discipline, termination and promotion.  Ortiz also created and implemented operational improvements, and helped launch two Delivery Stations in the Bay Area and improve a third Delivery Station that was struggling.  These undisputed facts easily satisfy the executive exemption of California Wage Order 7-2001[2] and the Fair Labor Standards Act (FLSA).

Yet, Ortiz would have this Court believe that Golden State paid him nearly $70,000 to primarily perform non-exempt manual tasks such as sorting packages (known as working "in the path"), breaking down boxes, scraping tape and moving pallets.  But this contention cannot stave off summary judgment.  Aside from the fact that his job did not require such work, Ortiz admittedly worked alongside associates to ***continuously*** observe and assess their performance throughout his shift.  These observations, in turn, allowed Ortiz to make decisions designed to maximize the performance of his department – such as labor allocations, job assignments, coaching and additional training.  Any manual work that Ortiz performed, therefore, was directly and closely related to his exempt duties – meaning that such work was exempt as well.  *See, e.g., Batze v. Safeway, Inc.,* 10 Cal. App. 5th 440, 480-481 (2017) (holding that "[a] task performed because it is 'helpful in supervising the employees or contribute[s] to the smooth functioning of the department' is exempt, even though the identical task performed for a different, nonmanagerial reason would be nonexempt.").

In short, Ortiz meets all of the requirements of the executive exemption under both

---

[1] Plaintiff also has named Amazon.com LLC as a defendant under a joint employment theory.  To the extent Plaintiff's claims survive summary judgment, Defendants reserve the right to argue that Amazon.com LLC did not employ Plaintiff and is not a proper defendant in this case.
[2]  California Wage Order 7-2001 is codified at 8 CCR § 11070.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S NOTICE AND MSJ
Case No. 3:15-cv-02277-JST

California and federal law. Therefore, his claims for unpaid overtime and minimum wage (Count I through III) fail as a matter of law. Alternatively, Ortiz's minimum wage claim under the FLSA (Count II) fails because he was paid far in excess of minimum wage for all hours worked.

Ortiz's remaining state law claims for failure to provide meal and rest periods, failure to provide accurate itemized wage statements, waiting time penalties, unfair business practices, and his claim under the Private Attorneys' General Act (PAGA) (Count IV-VIII), all hinge on his contention that he was improperly classified as an exempt employee. Because it is undisputed Ortiz was properly classified as exempt, each of his derivative claims likewise fail as a matter of law. In sum, the Court should grant summary judgment in favor of Defendants on all of Ortiz's claims.

## III. STATEMENT OF RELEVANT FACTS

### A. Ortiz Was Paid Nearly $70,000 A Year To Manage Operations In Golden State's Complex Delivery Stations.

At all relevant times during Ortiz's employment, Golden State operated Delivery Stations in California. Declaration of Marc Lopez ("Lopez Decl.") ¶ 3. These Delivery Stations are the final step of a highly complex and intricate distribution network. *Id.* Delivery Stations receive and sort millions of packages per year for outbound routes in order to enable last mile delivery to customers. *Id.*

Ortiz holds a Bachelor of Science degree in Business Administration from UC Berkeley. Pl. Depo., Exh. 5 at 1, 147:21-148:17. [3] On February 1, 2016, he was hired as a Level 4 Shift Manager, Logistics, at Golden State's Delivery Station in South San Francisco. Pl. Depo., Exh. 1, 31:2-19, 41:19-24. On April 30, 2016, he transferred to the Delivery Station in San Leandro. Declaration of Amanda Murrow ("Murrow Decl.") 4; Pl. Depo. 163:24-164:4. On or about August 16, 2016, Ortiz transferred once again, this time to the Delivery Station in Richmond, where he remained until the Company terminated him on December 11, 2016, for sending an inappropriate e-mail to colleagues, walking on a conveyor belt in violation of safety policy

---

[3] Citations to Ortiz's deposition transcript are referenced as "Pl. Depo. [page]:[lines]." Exhibits to Ortiz's deposition transcript are referenced as "Pl. Depo., Exh. [number], [page]." The deposition testimony excerpts and exhibits cited herein are attached to the Declaration of Eric Meckley ("Meckley Decl.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANTS' MSJ, OR, IN THE
ALTERNATIVE, MPSJ
CASE NO. 4:17-cv -03820-JSW

(which resulted in his falling and suffering injury), and asking a co-worker to lie during the investigation into his safety violation. Murrow Decl. ¶ 5; Pl. Depo. 20:10-20, 168:17-20; Lopez Depo. 22:11-22, 23:8-10.

At all three Delivery Stations, which ranged in size from 40,000 to 220,000 square feet, Ortiz was responsible for the operation of the Delivery Station during the night sort. Vaidya Depo. 141:14-20, 142:24-143:14; Pl. Depo. 43:20-21, 134:7-135:9, 163:24-164:24, 196:25-197:3. For this, he received an annual salary of $68,500 (approximately $1,317/week), a signing bonus of $13,500, 65 restricted stock units (currently valued at more than $1,600 per share), and benefits. Pl. Depo., Exh. 1, 31:10-19, 33:2-14; Murrow Decl. ¶ 3. By contrast, the hourly rate of an entry-level "Tier 1" associate at Ortiz's Delivery Stations in 2016 was approximately $14 per hour. Murrow Decl. ¶ 7.

**B.** **Ortiz Used His Discretion And Judgment To Manage A Team of Up to 100 Associates.**

**1.** **Ortiz Continuously Monitored, Directed And Reassigned The Work Of A Team Of 80 to 100 Associates.**

At all three Delivery Stations, Ortiz managed a team of between 80 to 100 Tier 1 associates, and had a Shift Assistant (known as a "Tier 3") report to him. Meckley Decl. ¶ 3, Exh. D (RFA No. 1); Pl. Depo., Exhs. 5 and 6, 114:11-12, 147:21-148:17, 177:13-20. Ortiz testified that "occasionally," his station manager and an area manager worked the night shift with him. Pl. Depo. 59:24-60:9. In general, however, Ortiz was the only manager on duty for the night sort operation. Pl. Depo. 196:20-197:3.

Ortiz not only trained newly hired Tier 1 associates (Pl. Depo. 111:11-13), but also led on-the-job training for associates who "were doing the job improperly or had issues fulfilling their job duties." Pl. Depo. 111:14-17. Ortiz did not have to consult with human resources to conduct this training. Pl. Depo. 111:18-22.

Throughout his shift, Ortiz identified associate performance strengths and weaknesses and assigned and reassigned their roles based on skill set and work quality. Pl. Depo. 80:25-81:3, 87:19-90:5, 126:24-127:25. To do so, Ortiz checked and reviewed their work quality - via both direct observation and analysis of performance data - throughout his shift. Pl. Depo. 94:18-21,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

207:20-208:20. Ortiz also documented associate performance in order to let other managers know "hey, this guy is really good at unloading. Hey, this person is good at scanning." Pl. Depo. 112:11-113:4.

Even when Ortiz was allegedly working alongside associates, he was observing their performance:

> Q: And then how much time would you spend reviewing the quality of the work that associates were performing?
>
> A: I mean, while I was working alongside them I would be watching them, so…..

Pl. Depo. 126:24-127:3. As Ortiz explained: "In working alongside my colleagues, I would see things that could be improved or things that were wrong." Pl. Depo. 94:18-95:15.

Moreover, that observation was continuous:

> Q: I was trying to understand when you're saying the things that were the time periods when you were working alongside the associates. I was identifying sorting on conveyer belts, moving bins onto bread racks, staging for drivers, moving bread racks, those things.
>
> A: Yes. During each of those things, if there was an opportunity that needed to be addressed, I would take that opportunity, but there was no set number during every day where I would be coaching.
>
> Q: All right. So it wasn't like you said, okay, for this hour I'm going to observe these tier one associates. It was kind of continual as you were working alongside them?
>
> A: **That's correct**.

Pl. Depo. 127:11-25 (emphasis added).

Ortiz used his continuous observation of associates to make job assignments:

> Q: Okay. And one of the things I think you said that you would use to determine who got what jobs was whether -- or how they performed on a particular job; is that right?
>
> A: That's correct.
>
> Q: So someone who might be really great at a particular job, you might assign that to them?
>
> A: Yes.
>
> Q: And conversely, did you ever, you know, decide that someone should have more experience during a particular job and, therefore, assign them that job?
>
> A: Yes.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A: Just based off my experience with the associates, I would know who was good at what job, who was good a different job.

Pl. Depo. 89:11-22, 111:23-112:10.

Ortiz assigned "labor using the resources I had to be most sufficient." Pl. Depo. 180:16-181:2. His labor assignments were dynamic because "there was a lot of turnover. There was a lot of no-shows, there was people getting sick, things like that." Pl. Depo. 87:19-89: 22. Ortiz also had "some leeway" to decide whether and how many associates he needed to work overtime. Pl. Depo. 221:2-6. He also managed and monitored the meal and rest breaks of his workforce of up to 100 associates. Pl. Depo. 98:20-99:4.

Ortiz's labor allocation decisions had significant consequences. In a Delivery Station, misallocation of labor may result in back-up of product flow, which would impact all subsequent processes and workers, with significant monetary and operational impact. Lopez Decl. ¶ 5. For example, the failure to assign enough – or the right – associates to unload packages or to group packages correctly and in the right bins and pallets could cause delays in unloading and loading trucks at the Delivery Station. *Id*. Further, in Delivery Stations, some work is performed 50 feet off the ground and other requires the use of giant conveyor systems. *Id*. Thus, assigning untrained or lesser skilled or experienced associates to certain types of work could have serious safety consequences, with risk of injury or death. *Id*.

## 2. Ortiz Launched Facilities, Identified Ways To Improve Operational Efficiency, And Continuously Analyzed Performance Metrics.

Ortiz helped launched three facilities and assisted a "struggling" San Leandro Delivery Station. Pl. Depo. 162:9-17, 179:4-14; Meckley Decl. ¶ 3, Exh. D (RFA No. 7). As a Shift Manager, Ortiz understood that he was expected to "actively engage with site and regional operations leadership to implement new operational improvements," and continually identify ways to improve Delivery Station operations. Pl. Depo., Exh. 2 (job posting), 134:7-135:9, 140:25-141:4.

Consistent with that understanding, Ortiz created new processes and procedures at the Delivery Stations where he worked, including for preloading vans (Meckley Decl. ¶ 3, Exh. D (RFA No. 4)), large and small sort areas and multiple induction points (*Id*., RFA Nos. 2 and 3).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANTS' MSJ, OR, IN THE
ALTERNATIVE, MPSJ
CASE NO. 4:17-cv -03820-JSW

Ortiz's operational ideas created efficiencies and boosted the productivity of Ortiz's facilities by improving the volume and rate at which goods were sorted. Pl. Depo. 152:18-157:8. For example, Ortiz accomplished the following:

- "Increase[d] induction rates from 60-150% while driving down quality errors. Create[d] Small & Large Sort Areas and multiple induction points." Pl. Depo., Exh. 5 at 1 (Resource Corner Resume);[4] 152:10-153:15. According to Ortiz, "[b]y working with my colleagues, I found ways to improve the process, and we tested those ways and we implemented them." Pl. Depo. 153:5-9.

- "Amazon 2016 - #2 Sortation quality in the entire network. Broke the all-time induction record for a delivery station at 10,600 in one hour." Pl. Depo., Exh. 5 at 1, 163:14-23.

- "Of 43 Delivery Stations in the network, ours was ranked 2nd in sortation quality, which I was directly responsible for. In addition, my team created a new process at Amazon for Pre-loading delivery vans. We were the first station to do this and the PowerPoint and written doc I created are now network-standard in all stations." Pl. Depo., Exh. 6 at 3, 179:15-180:15.

- "Assisted a struggling site with a routing systems change resulting in it becoming a top performer in the DSF node for Prime Day '16." Pl. Depo., Exh. 5 at 1, 162:9-163:7.

- Created a new process for preloading delivery vans. Meckley Decl. ¶ 3, Exh. D (RFA No. 8). In fact, the power point that Ortiz created was used to train others in the process. Pl. Depo. 157:2-8.

In addition to creating new processes and procedures, Ortiz reviewed and analyzed operations data and prepared high-level reports. Pl. Depo. 59:5-7; 82:13-21. At the start of his shift, he received a handoff report from the prior shift manager, which stated "how the day had progressed, challenges that had been encountered, things we should potentially address." Pl. Depo. 72:4-14. He also talked to managers on the swing shift about any operational issues he needed to know about. Pl. Depo. 69:5-10. At the end of his shift, he prepared a handoff report

---

[4] Statements contained on a resume are deemed to be admissions of fact constituting "substantial evidence" regarding an employee's job duties. *See, e.g.*, *Combs v. Skyriver Communications, Inc.*, 159 Cal. App. 4th 1242, 1264 (2008) (in holding that "substantial evidence" supported the employee's exempt status, the first piece of evidence the Court discussed was the plaintiff's resume); *Wilbur v. Silgan Containers Corp.*, No. 2:06-cv-02181-MCE-EFB, 2008 WL 3863700 at *6 (E.D. Cal. Aug. 19, 2008) (based on plaintiff's resume, the court held that "plaintiff's own statements underscore the managerial nature of the production supervisor position"); *Allen v. Centillium Commc'ns., Inc.*, No. C-06-06153 (EDL), 2008 WL 916976, *3 (N.D. Cal. Apr. 3, 2008) (granted summary judgment on the plaintiff's claim that she was misclassified based in part on plaintiff's resume where she represented that she performed exempt duties, including training and supervising personnel).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANTS' MSJ, OR, IN THE
ALTERNATIVE, MPSJ
CASE NO. 4:17-cv -03820-JSW

for the morning shift manager, which detailed the operation of the night sort shift. Pl. Depo. 59:5-7, 82:13-21, 97:4-17. Ortiz sometimes prepared a GEMBA board, which "had different quadrants relating to issues we had had through the night, what our throughput number was, various measurements taken throughout the night." Pl. Depo. 82:24-83:6. Ortiz showcased his Business Administration degree skills by adding automation to the handoff report, "in order to be able to complete it quicker." Pl. Depo. 149:12-16. *See also* Pl. Depo. 190:18-21 ("I made a template of the handoff, which included a tab for sortation metrics. I ran various data pulls throughout the night and incorporated them into this sheet."). Finally, Ortiz debriefed the station manager about "how the shift went, any challenges, any safety issues" and throughput and prepared and sent his managers e-mails describing any "glitches throughout the night" and "if there was a safety issue." Pl. Depo. 85:20-86:4, 98:10-19.

### C. Ortiz Disciplined and Terminated Associates, Made Recommendations Regarding Promotions and Had the Authority to Make Recommendations Regarding Hiring.

Because Ortiz did not have human resources on site at the Delivery Stations where he worked, he handled personnel issues on his own. Pl. Depo. 103:8-104:2, 228:13-24. He had the authority to discipline and terminate the associates he supervised and he exercised his authority. Pl. Depo. 103:8-104:2; Lopez Decl. ¶ 4. For instance, Ortiz disciplined an associate who was caught watching pornography on his scanning device by sending the employee home. Pl. Depo. 103:8-104:2. Without consulting with human resources, Ortiz made the judgment call to send the employee home. *Id.* He subsequently reported the incident to human resources, opining that the associate was a security risk and "should be let go." Pl. Depo. 104:8-105:6, 108:24-109:3. To Ortiz's knowledge, that employee was terminated because he never returned to work. Pl. Depo. 109:4-6.

Ortiz also counseled associates about their behavior and work performance. Pl. Depo. 106:3-6. Thus, he conducted standup meetings daily, where he "discussed opportunities" and "challenges" with his team. Pl. Depo. 81:4-8. He also issued verbal warnings to associates who violated safety policies (Pl. Depo. 103:4-7) and reported associates who violated company policies to human resources. Pl. Depo. 103:8-104:10. In one instance where an associate claimed

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANTS' MSJ, OR, IN THE
ALTERNATIVE, MPSJ
CASE NO. 4:17-cv -03820-JSW

that another associate had stolen her purse from her car, Ortiz decided to send the accused associate home for the day "in order to de-escalate the conflict." Pl. Depo. 105:11-24.

Ortiz made recommendations for advancement of Tier 1 associates to what Ortiz describes as a "Tier 2" position, at least some of which were followed by upper management. Pl. Depo. 159:10-160:7. In addition, Ortiz "empower[ed] associates through the creation of an ambassador program," through which Ortiz recommended that associates be promoted to leads. Pl. Depo., Exh. 5 at 1, 109:14-110:6, 161:9-20.

It was the practice of Shift Managers to interview job applicants and provide recommendations regarding hiring. Nevado Depo. 66:23-67:14; Murrow Decl. ¶ 9. Consistent with that practice, Ortiz participated in training on how to interview candidates for employment and recommended an employee who worked in San Leandro be hired at "the new Richmond site." Pl. Depo., 109:14-110:6, 203:3-21; Murrow Decl. ¶ 8, Exh. A (AMZ-ORT001665).

## IV. ARGUMENT

### A. The Court Should Grant Summary Judgment On Ortiz's California Overtime Claim Because Ortiz Was Exempt From Overtime Requirements Under the Executive Exemption.[5]

To be exempt as an executive under California law, an employee must (1) manage a customarily recognized department or subdivision; (2) direct the work of at least two employees; (3) have the authority to hire or fire other employees or make suggestions or recommendations regarding hiring or firing and as to the advancement and promotion or any other change of status of other employees that are given weight; (4) customarily and regularly exercise discretion and independent judgment; (5) spend more than 50% of his time doing exempt work; and (6) earn a salary equal to two times the state minimum wage. 8 CCR § 11070. For the reasons set forth below, Ortiz meets all requirements of the executive exemption under California law.

#### 1. Ortiz Managed a Customarily Recognized Department or Subdivision.

Management of a customarily recognized department or subdivision may include supervision of a unit with a separate and distinct function. 8 CCR § 11070(1)(A)(1)(a); *Batze*, 10

---

[5] Although Defendants have moved for summary judgment on the executive exemption only, they reserve the right to argue that Ortiz was also exempt pursuant to the administrative and combination exemptions.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Cal. App. 5th at 419 n.37 (2017) (holding assistant manager on night shift managed recognized department or subdivision because he was in charge of entire store); *Taylor*, 190 Cal. App. 4th at 1017 (2010) (in affirming summary judgment, holding that plaintiff responsible for the day sort managed a customarily recognized department or subdivision because "he was in charge of a specific group of workers with a defined and permanent function in the overall package delivery operation"). Here, Ortiz managed, typically on his own, just such a unit– namely, the night sort shift at three Delivery Stations. Pl. Depo. 43:20-21. 57:13-58:18, 59:24-60:9, 163:24-164:24, 196:20-197:3. Accordingly, it is undisputed that Ortiz's duties involved the management of a discrete, easily defined, and recognized department or subdivision of Golden State FC.

### 2. Ortiz Directed the Work of Two or More Associates.

It is also undisputed that Ortiz customarily and regularly directed the work of two or more employees. 8 CCR § 11070(1)(A)(1)(b). In fact, Ortiz supervised **between 80 to 100 associates**. Meckley Decl. ¶ 3, Exh. D (RFA No. 1); Pl. Depo. 160:10-21. Throughout his shift, Ortiz identified the strengths and weaknesses of associates, assigned and reassigned labor roles to associates based on their performance on a daily basis, counseled, coached and trained associates, and made decisions regarding employee discipline and termination. Pl. Depo. 80:25-81:8, 87:19-89:22, 90:3-6, 103:4-104:10, 105:11-24, 108:24-109:3, 111:14-22, 112:4-10, 127:21-25. These undisputed facts establish that Ortiz customarily and regularly directed the work of more than two employees. *See* 29 C.F.R. § 541.102 (exempt management duties include "appraising employees' productivity and efficiency" and "disciplining employees"); *Boyce v. Independent Brewers United Corp.*, No. 15-cv-02263-YGR, 2017 WL 2377107, *13 n.17 (N.D. Cal. June 1, 2017) (same); *Batze,* 10 Cal. App. 5th at 449 (affirming judgment in favor of employer where night assistant manager supervised ten employees, coached them, reviewed their performance, addressed their negative behavior, trained new employees, and communicated safety concerns to employees); *Taylor*, 190 Cal. App. 4th at 1019 (affirming summary judgment in favor of employer where air hub supervisor supervised at least two employees, provided feedback to them, ensured proper staffing levels, provided motivation and support to improve employee performance, and assessed employee performance).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANTS' MSJ, OR, IN THE
ALTERNATIVE, MPSJ
CASE NO. 4:17-cv -03820-JSW

**3.** **Ortiz Made Suggestions, Recommendations and Decisions on Discipline, Terminations, and Promotions and Could Make Recommendations Regarding Hiring.**

Under the executive exemption, an employee merely need make "suggestions and recommendations as to the hiring *or* firing and as to the advancement and promotion *or* any other change of status of other employees, [which] will be given particular weight." 8 CCR § 11070(1)(A)(1)(c) (emphasis added); 29 C.F.R. § 541.105 ("[a]n employee's suggestions and recommendation may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status."); *Wilbur v. Silgan Containers Corp.*, No. 2:06-cv-02181-MCE-EFB, 2008 WL 3863700, at *9 (E.D. Cal. Aug. 19, 2008) (in accord); DLSE Enforcement Policies and Interpretation Manual, § 53.5.1. Further, factors to be considered in determining whether an employee's recommendations are given "particular weight" include "whether it is part of the employee's job duties to make such suggestions and recommendations." *See* 29 C.F.R. § 541.105; *Boyce*, 2017 WL 2377107 at *13 (N.D. Cal. June 1, 2017) (same).

There can be no genuine dispute that Ortiz, who did not have human resources on site at the Delivery Stations he managed, satisfies this prong of the exemption as well. He not only had the authority to discipline and terminate employees, but also exercised that authority. As discussed above, Ortiz unilaterally decided to send an associate who was caught watching pornography home, and advised human resources that the associate was a security risk and "should be let go." Pl. Depo. 103:8-104:21, 108:24-109:3. That employee never returned to work. Pl. Depo. 109:1-6. Likewise, Ortiz unilaterally determined to send an associate accused of stealing home, "in order to de-escalate the conflict." Pl. Depo. 105:11-24. In addition, Ortiz counseled associates about their behavior and work performance, both through stand-up meetings and otherwise, and determined the need for additional training for associates who "were doing the job improperly or had issues fulfilling their job duties." Pl. Depo. 81:4-8, 106:3-6. 111:14-22. These undisputed facts render Ortiz exempt. *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1116-1117 (9th Cir. 2001) (holding that the employees qualified for the executive exemption even

though they did not have ultimate authority to hire and fire because they "were responsible for training the assistant managers, ensuring their compliance with policies and procedures, and reporting their hours worked … [and] recommended firing assistant managers in one instance").

Ortiz also qualifies for the exemption because he made suggestions related to "the advancement and promotion or any other change in status of other employees." 8 CCR § 11070(1)(A)(1)(c). He recommended that Tier 1 associates be promoted to what Ortiz described as a "Tier 2" position, and those recommendations were followed on at least some occasions. Pl. Depo. 159:10-160:7. As such, Ortiz made recommendations regarding promotions that were given particular weight. *Wilbur*, 2008 WL 3863700 at *10 (holding that a supervisor was exempt, because he "made recommendations as to whether individuals hired for skilled positions should advance from 'trainee' to 'non-trainee' status").

Finally, Ortiz had the authority to make hiring recommendations, and exercised that authority on at least one occasion by recommending that an employee who worked in San Leandro be hired at "the new Richmond site" because he thought she "would be a really good fit for the Richmond team." Pl. Depo. 109:14-110:6. Wilbur, 2008 WL 3863700, at *9 (finding that although plaintiff did not have the power to hire employees unilaterally, defendant relied on plaintiff's suggestions and recommendations regarding hiring employees).

### 4. Ortiz Exercised Discretion and Independent Judgment When Performing His Management Responsibilities.

To be exempt, an employee must "customarily and regularly exercise[] discretion and independent judgment." 8 CCR § 11070(1)(A)(1)(d). The level of independent judgment and discretion required need not involve highly complex issues; a supervisor may still exercise independent judgment and discretion when acting within prescribed procedures. *See Guiltoyle v. Dollar Tree Stores, Inc.*, No. 12-cv-00703-GEB-CKD, 2014 WL 66740 at *4 (E.D. Cal., Jan. 8, 2014) ("Where government regulations or internal company policies and procedures simply *channel* the exercise of discretion and independent judgment, as opposed to *eliminating* it entirely or otherwise constraining it to a degree where any discretion is largely inconsequential, the executive exemption may still apply"); *Patel v. Nike Retail Services, Inc.*, Case No. 14-cv-04781-RS, 2016 WL 1241777, *9 (N.D. Cal. Mar. 29, 2016) ("Importantly, 'the fact that [an employer]

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANTS' MSJ, OR, IN THE
ALTERNATIVE, MPSJ
CASE NO. 4:17-cv -03820-JSW

expects [employees] to follow certain procedures or perform certain tasks does not establish whether . . . they 'customarily and regularly exercise[ ] discretion and independent judgment'"). Ortiz meets this prong of the exemption as well.

It is undisputed that Ortiz engaged in the type of work that courts have held require discretion and independent judgment. Among other things, Ortiz:

- made operational decisions to maximize efficiency, safety and quality workflow in real time. *See* Pl. Depo. 152:18-157:8, 163:14-23; *Taylor.*, 190 Cal. App. 4th at 1019-21 (affirming summary judgment for employer on plaintiff's misclassification claims where plaintiff "determin[ed] if modifications to work flow were necessary" and "participat[ed] in development and implementation of work process plans to promote efficiency"); *Boyce v. Ind. Brewers United Corp.,* No. 15-cv-02263-YGR, 2017 WL 2377107, *11 (N.D. Cal. June 1, 2017) (following bench trial, the court ruled in favor of employer on plaintiff's misclassification claims where plaintiff was responsible for notifying his supervisors "of any issues relating to the lack of materials necessary for production or delays or disruptions in the operations that would require the schedule to be modified");

- created new processes and improvements at his Delivery Stations. *See* Pl. Depo. 152:10-157:8, 163:14-23; *Taylor*, 190 Cal. App. 4th at 1020 (affirming summary judgment for employer on plaintiff's misclassification claims where plaintiff "create[d] business improvement plans");

- made independent decisions about labor allocations based on daily productivity goals and associate skill and performance. *See* Pl. Depo. 80:22-81:3, 90:3-6, 94:18-21, 127:21-25; *Taylor*, 190 Cal. App. 4th at 1019 (granting summary judgment where plaintiff ensured proper staffing levels and assessed employee performance): *Patel*, 2016 WL 1241777 at *8 (denying plaintiff's motion to certify her misclassification claims where plaintiff "made decisions regarding staffing and product flow"); *Banuelos v. UPS Ground Freight, Inc.*, CV 15-2408 PA (AJWx),

2016 WL 47259, *9 (C.D. Cal. Jan. 4, 2016) (granting summary judgment for employer on plaintiff's misclassification claims where plaintiff was responsible for "scheduling pickups and assigning them to drivers based on business demands"); and

- made decisions about coaching, disciplining, training and developing associates, all without consulting with human resources. *See* Pl. Depo. 81:4-8, 103:4-104:2, 105:11-24, 106:3-6, 108:24-109:3, 111:11-22; *Taylor*, 190 Cal. App. 4th at 1020 (affirming summary judgment for employer on plaintiff's misclassification claims where plaintiff "administer[ed] disciplinary process," "monitor[ed] employee training," and "provid[ed] feedback and manag[ed] employee career development"); *Wilbur*, 2008 WL 3863700 at *11 (granting summary judgment for employer on plaintiff's misclassification claims where plaintiff coached, trained, disciplined, and instructed employees); *Copas v. East Bay Municipal Utility Dist.*, 61 F.Supp.2d 1017, 1037 (N.D. Cal. 1999) (granting summary judgment for employer on plaintiff's misclassification claims where plaintiff "was responsible for training, directing, supervising, evaluating, and disciplining" the employees he supervised); *Banuelos*, 2016 WL 47259 at *9 (granting summary judgment for employer on Plaintiff's misclassification claims where plaintiff "analyze[d] the performance and behavior of her direct reports and issue appropriate discipline where necessary").

In sum, Ortiz managed a complex and dynamic night sort operation by not being wedded to any policies or procedures and constantly problem-solving in order to adapt to changing business needs. Pl. Depo. 59:5-7, 87:19-89-22, 152:10-153:15. Thus, he was performing exempt work. *See Nordquist v. McGraw-Hill Broadcasting Co.*, 32 Cal. App. 4th 555, 564 (1995) (discretion and independent judgment is defined merely as "the comparison and evaluation of possible courses of conduct and acting or making a decision after various possibilities have been considered").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANTS' MSJ, OR, IN THE
ALTERNATIVE, MPSJ
CASE NO. 4:17-cv -03820-JSW

## 5. Ortiz Was Primarily Engaged In Exempt Duties.

In order to determine whether an employee is primarily engaged in exempt duties, the court must examine the amount of time the employee spends performing exempt work, "together with the employer's realistic expectations and the realistic requirements of the job." 8 CCR § 11070(1)(A)(1)(e) (2011); *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 802 (2010). Exempt management duties include:

> [A]ctivities such as "interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status ... handling employee complaints and grievances ... planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; and planning and controlling the budget; and monitoring or implementing legal compliance measures."

29 C.F.R. § 541.102; *accord Pendoza v. PetSmart, Inc.*, No. ED CV 11-298-GHK (DTBx), 2012 WL 9506073 at *2 (C.D. Cal., June 14, 2012) ("The activities constituting exempt work and non-exempt work shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. sections 541.102, 541.104-111 and 541.115-116.").

The list contained in section 541.102 is not all inclusive; other responsibilities can be considered management as well. Ensuring compliance with company policies, procedures, or management manuals also qualifies as management work. *Baldwin*, 266 F.3d at 1116-17. Management responsibilities also include management and staff meetings. *Wilbur*, 2008 WL 38663700, at *19-*20 (meetings to discuss safety issues and daily staff meetings involved management). Exempt work also includes all work that is "directly and closely related" to exempt work or that is "properly viewed as a means for carrying out exempt functions." 8 CCR §11070(1)(A)(1) (e); *Wilbur*, 2008 WL 38663700 at *10 and *12 ("Under California law, supervisory or exempt duties also include non-exempt work that is "directly and closely related to exempt duties;" such "directly and closely related" non-exempt work very often overlaps with exempt supervisory work, so that a supervisor can better manage employees who exclusively

perform warehouse jobs;" exempt duties "include all work 'directly and closely related to exempt work and work … properly viewed as a means for carrying out exempt functions'").

Consequently, while California law requires that the employee perform such work at least 50% of his time, the duties he performs for that 50% "need not be absolutely exempt, but merely 'directly and closely related to exempt work.'" *Wilbur*, 2008 WL 38663700, at \*32. Thus, "a supervisor who watches the operation of the machinery in his department in the sense that he 'keeps an eye out for trouble' is performing work which is directly and closely related to his managerial responsibilities." *Id*. at \*34 (quoting 29 C.F.R. § 541.108(f)). Similarly, maintaining control of the flow of materials and checking line speed throughout the shift is exempt work. *Id*. at \*35.

With these standards in mind, there can be no genuine dispute that Ortiz spent more than 50% of his time engaged in exempt work. Ortiz continuously supervised a workforce of 80 to 100 associates—a duty that is clearly exempt. Moreover, he managed productivity and performance, ensured proper staffing levels and determined training needs, reviewed documentation to verify compliance with company requirements, assessed productivity and service performance, provided feedback, motivation, and support to hourly employees to improve performance, participated in daily meetings to discuss work goals, challenges and opportunities, determined if modifications to workflow were necessary, determined how to fix any problems, provided "handoff" reports to other managers that identified problems to be corrected, allocated staffing, and assessed employee performance. These are ***precisely*** the types of duties held to be exempt in *Taylor*. 190 Cal. App. 4th at 1019-21. *See also* 29 C.F.R. § 541.102 (exempt job duties include "interviewing, selecting, training of employees," "directing the work of employees," "maintaining production or sales records for use in supervision or control," "planning the work," "apportioning the work among the employees," "controlling the flow and distribution of materials or merchandise and supplies," and "providing for the safety and security of the employees or the property" and "planning and controlling the budget").

Ortiz asserts that he spent hours performing non-exempt tasks such as working in the path or on the conveyor sorting boxes, unloading boxes and replacing scan gun batteries. *See*, *e.g.*, Pl.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Depo. 121:3-11, 121:18-20, 122:20-123:10.  As a threshold matter, to the extent Ortiz spent more than 50% of his time performing the work of hourly associates, that was his own decision, and not a requirement of the position.  Nothing in the job description for this nearly $70,000 a year position refers to any such work.  Meckley Decl., Exh. 2 (job posting).  "Under California law an employee cannot, through incompetence, attain non-exempt status and the concomitant benefits available to non-exempt employees under California law." *Musgraves v. Sears Holding Management Corp.*, No. CV-11-0625 GAF (JEMx), 2012 WL 3222905, *1 (C.D. Cal. July 19, 2012) (citing *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal.4th 785 (1999) (summary judgment granted where manager claimed he spent more than half of his time on non-exempt duties where employer's expectation that manager would perform predominantly exempt tasks was reasonable).

Regardless, Ortiz's own testimony shows that any manual labor was "directly and closely related" to Ortiz's exempt duties.  *Wilbur*, 2008 WL 38663700 at *10.  While working alongside associates, Ortiz was "watching" associate performance to "see things that could be improved or things that were wrong."  Pl. Depo. 95: 9-11; 126:24-127:3).  And he did so ***continuously***.  Pl. Depo. 126:24-127:20, 127:21-25 (Q: All right.  So it wasn't like you said, okay, for this hour I'm going to observe these tier one associates.  It was kind of continual as you were working alongside them?  A: That's correct.).  Ortiz used this constant observation to make staffing, coaching and other decisions for the purposes of running his department.  Pl. Depo. 126:24-127:25.  Thus, "[e]ven if Plaintiff performed some non-exempt tasks, he was still primarily engaged in exempt work."  *Wilbur*, 2008 WL 38663700 at *10 and *12 (affirming summary judgment to employer under California law because "'directly and closely related' non-exempt work very often overlaps with exempt supervisory work, so that a supervisor can better manage employees who exclusively perform warehouse jobs"); California Labor Commissioner, Division of Labor Standards Enforcement ("DLSE") Opinion Letter, "Exemption: Executive, Applicability of Federal caselaw," at p. 6 (July 6, 1993) *available at* https://www.dir.ca.gov/dlse/opinions/1993-07-06.pdf ("[D]uring that time [when a supervisor is performing the same work as subordinates] it is also his job to consider such matters as how he

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANTS' MSJ, OR, IN THE
ALTERNATIVE, MPSJ
CASE NO. 4:17-cv -03820-JSW

can cause his establishment to perform more efficiently and more profitably; how he can motivate or otherwise assist his … service employees to perform their functions more efficiently, how we can resolve any employee or other problems which have arisen; whether each of these employees is doing his or her job in an adequate manner; how corrective action can be taken with regard to any such employee who is not adequately performing; and whether his inventory is proper. Once again, this employee is 'engaged in' work that is exempt");[6] *see also* 29 C.F.R. § 541.106(a) ("Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption" because "exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the non-exempt work.").

*Batze* is instructive. In *Batze*, plaintiffs alleged that store walks, working at the front-end of the store, and managing out-of-stocks were non-exempt tasks. In affirming judgment for the employer, the court held that store walks were exempt tasks because they were "'the chief method a manager uses to determine what is going on in the store and where (and with whom) he needs to devote attention.'" *Batze*, 10 Cal. App. 5th at 481. Likewise, the time plaintiffs spent at the front-end of the store was exempt because the managers "were put at the front to improve customer service by observing the checkers and courtesy clerks to determine they were working efficiently and providing satisfactory customer service." *Id*. Finally, managing out-of-stocks, which involved scanning the bar codes for out-of-stock products, was an exempt task because it "assisted the [manager] to fulfill his or her managerial responsibility for determining when and where out-of-stocks occur and minimizing them." *Id*. at 480.

So, too, here, to the extent Ortiz purportedly worked long spells "in the path," or on the conveyor, in order to sort packages with his associates, unload boxes, and move bread racks, he did so for the purpose of observing associate performance, identifying the skills of associates, coaching and training employees in real-time based on his real-time observations, re-allocating

---

[6] Opinion letters issued by the DLSE may be relied upon when interpreting California Wage Orders. *See Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 958, 959 n.9 (9th Cir. 2013) ("The DLSE's opinion letters, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance"; "the DLSE is the state agency empowered to enforce California's labor laws, including IWC Wage Orders").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANTS' MSJ, OR, IN THE
ALTERNATIVE, MPSJ
CASE NO. 4:17-cv -03820-JSW

labor based on associate skill, and generally running the night sort shift at his Delivery Stations. As in *Batze*, Ortiz's continuous observation of his associates in this regard "'were the chief method [Ortiz] use[d] to determine what is going on in the [Delivery Station] and where (and with whom) he need[ed] to devote attention'" and done for "assessing the condition of [his Delivery Stations] and determining the problems that needed to be addressed throughout" his Delivery Stations. *Id.* at 481.

In sum, Ortiz's own admissions demonstrate he spent more than 50% of his time on exempt duties.

### 6. Ortiz's Salary Was More Than Double California's Minimum Wage.

To satisfy the "salary basis" requirement for exempt status, an employee must earn at least two times the state minimum wage. 8 CCR 11070(1)(A)(1)(f). For Ortiz to have earned double the minimum wage during the relevant period, he must have earned an annual salary of at least $41,600.[7] It is undisputed that Ortiz meets Wage Order 7-2001's salary test because his annual salary was $68,500 per year—significantly more than double the minimum wage.

### B. The Court Should Grant Summary Judgment On Ortiz's Unpaid Overtime and Minimum Wage Claims Under the FLSA Because Ortiz Was Properly Classified as Exempt Under the Executive Exemption.

Given that Ortiz was properly classified as exempt under California law, he also was exempt under the FLSA. The federal executive exemption neither requires establishing the exercise of discretion and independent judgment, nor that the employee spent more than 50% of his time performing exempt duties. *See* 29 CFR 541.700(a)-(b) ("Time alone … is not the sole test" and determination of an employee's primary duty is based on an "employee's job as a whole."); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1114 (9th Cir. 2001) (affirming summary judgment for employer on plaintiffs' misclassification claim under the FLSA where plaintiffs spent 90 percent of their time on non-exempt tasks). Instead, defendants need only establish that Ortiz meets the following criteria:

   1)   a primary duty of management of the enterprise in which the employee is employed

---

[7] During Ortiz's employment with Golden State FC, the minimum wage in California was $10.00 per hour. *See History of California Minimum Wage*, State of Cal. Dept. of Indus. Relations, https://www.dir.ca.gov/iwc/MinimumWageHistory.htm. $10.00 minimum wage x 40 hours per week x 52 weeks per year = $20,800 x 2 = $41,600.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

or of a customarily recognized department or subdivision thereof;

2)  customarily and regularly direct the work of two or more other employees;

3)  have the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight; and

4)  be compensated on a salary basis at a rate of at least $455 per week.

29 CFR § 541.100.  It is undisputed that each prong of the exemption is satisfied.

First, as discussed in Section IV(A)(1) above, Ortiz managed a recognized department of Golden State FC by managing the night sort shift at three Delivery Stations.  29 C.F.R. § 541.103(b); Pl. Depo. 43:20-21, 163:24-164:24, 196:25-197:3; *Copas v. East Bay Municipal Utility Dist.*, 61 F. Supp. 2d 1017, 1037 (N.D. Cal. 1999) (granting employer's summary judgment on a plaintiff's FLSA overtime claim because he worked as the facility manager).  The fact that Ortiz was paid more than twice than the associates he supervised only underscores that his primary duty was management, even when he claims he worked "in the path."  29 CFR 541.700(a); Murrow Decl. ¶¶ 6-7.

Second, as set forth above in Section IV(A)(2), it is undisputed that one of Ortiz's primary duties included the supervision of between 80 to 100 associates and a Shift Assistant.  29 C.F.R. § 541.100(a)(3); *Copas v. East Bay Municipal Utility Dist.*, 61 F. Supp. 2d 1017, 1037 (N.D. Cal. 1999) (granting employer's summary judgment on a plaintiff's FLSA overtime claim because he supervised two facility technicians).

Third, as discussed in Section IV(A)(3) above, Ortiz made suggestions, recommendations and/or final decisions regarding discipline, termination, promotions or other change in status and his suggestions and recommendations were given particular weight.  29 C.F.R. § 541.105; *Copas v. East Bay Municipal Utility Dist.*, 61 F. Supp. 2d 1017, 1037 (N.D. Cal. 1999) (granting employer's summary judgment on a plaintiff's FLSA overtime claim because he was "responsible for training, directing, supervising, evaluating, and disciplining those two employees once they had begun working.").

Fourth, Ortiz meets the salary test for the executive exemption under the FLSA because he earned a salary of $68,500, or $1,317.31 per week.  Murrow Decl. ¶ 6.  As such, Ortiz was

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANTS' MSJ, OR, IN THE
ALTERNATIVE, MPSJ
CASE NO. 4:17-cv -03820-JSW

compensated on a salary basis at a rate of at least $455 per week. 29 CFR § 541.100(a)(1). Thus, Ortiz also meets all of the requirements of the executive exemption under the FLSA.

**C.** **Alternatively, Ortiz's Minimum Wage Claim Under the FLSA Fails Because He Was Compensated Above Minimum Wage For Every Hour Worked.**

Under the FLSA, an employer can satisfy the minimum wage requirement by dividing the employee's total weekly earnings by the number of hours worked. *See Douglas v. Xerox Business Services, LLC*, 875 F.3d 884 (9th Cir. 2017) (noting that both the per-hour and averaging methodologies for establishing minimum wage compliance "accomplish the stated goal [under the FLSA]: employees receive compensation for every hour worked at a rate no less than the…prescribed minimum hourly wage"); 29 C.F.R. § 778.109 (calculating the average hourly wage by dividing total remuneration for employment in any workweek by the total number of hours actually worked). Here, Ortiz claims he worked between 44 to 65 hours per week. Meckley Decl. ¶ 3, Exh. C (Interrogatory No. 11). The operative federal minimum wage in 2016 was $7.25 per hour. *See* Department of Labor, Wage and Hour Division, History of Federal Minimum Wage Rates Under the Fair Labor Standards Act, 1938-2009, *available at* https://www.dol.gov/whd/minwage/chart.htm. Based on Ortiz's pay records, Ortiz's weekly salary was $1,317 per week throughout his employment. Murrow Decl. ¶ 6. As such, giving Ortiz the benefit of every doubt, he still received more than double the required $7.25 per hour for each hour worked (65 hours per week ÷ $1,317 = $20.26 per hour). Therefore, Ortiz's minimum wage claim under the FLSA fails for this reason as well.

**D.** **The Court Should Grant Summary Judgment On Ortiz's Remaining Claims Because They Are Premised Entirely Upon His Being A Non-Exempt Employee.**

The Court should also grant summary judgment in favor of Defendants on Ortiz's Fourth (failure to provide meal and rest periods), Fifth (failure to provide accurate itemized wage statements), Sixth (failure to pay wages on termination), Seventh (unfair business practices) and Eighth (Private Attorneys' General Act (PAGA)) Claims for Relief because they are derived from allegations that Ortiz was misclassified as an exempt manager. Because Ortiz was properly classified as exempt, all of these causes of action fail as well. *See Taylor*, 190 Cal. App. 4th at 1013-14 (where the "gravamen of the complaint [is] based on the claimed misclassification of

[the plaintiff] as exempt," a finding that the plaintiff "was properly classified as exempt [is] dispositive of the entire complaint"); *Wilbur*, 2008 WL 3863700 at *12 (granting summary judgment for the employer; holding that exempt supervisory employees are not subject to the provisions for overtime pay, meal and rest periods or itemized wage statements because such provisions "shall not apply to persons employed in ...executive ... capacities"); *Price v. Starbucks*, 192 Cal. App. 4th 1136, 1142 (2011) ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail").

## V. <u>CONCLUSION</u>

For all the reasons stated above, the Court should grant Defendants' motion and enter judgment and order all appropriate relief in favor of Defendants.

Dated: February 22, 2019                MORGAN, LEWIS & BOCKIUS LLP

By */s/ Eric Meckley*
ERIC MECKLEY
Attorneys for Defendants

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO