UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ORTIZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>AMAZON.COM LLC, et al.,<br><br>                    Defendants. | Case No.  17-cv-03820-JSW<br><br>**ORDER GRANTING IN PART, AND DENYING, IN PART MOTION FOR SUMMARY JUDGMENT AND SETTING FURTHER CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 100 |

Now before the Court for consideration is the motion for summary judgment filed by Defendants Golden State FC LLC ("Golden State") and Amazon.com LLC ("Amazon") (collectively "Defendants").  The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it has had the benefit of oral argument.  The Court HEREBY GRANTS Defendants' motion on Plaintiff's claims under the Fair Labor Standards Act ("FLSA") but DENIES Defendants' motion on the state law claims.

## BACKGROUND[1]

In his Second Amended Complaint ("SAC"), Plaintiff, Michael Ortiz ("Ortiz"), on behalf of himself and a putative class, alleges that Defendants, acting as joint employers, misclassified him as an exempt employee under federal and state law.[2]  As a result, Ortiz alleges that

---

[1]     Unless otherwise noted, the facts are undisputed.

[2]     In their briefs, Defendants focus on what Ortiz's duties were while employed by "Golden State."  In contrast, Ortiz's brief focuses on what his duties were while employed by "Amazon."  Defendants have not moved for summary adjudication on the issue of whether they were joint employers.  Accordingly, the Court refers to them collectively as "Defendants" throughout this Order.  If, however, a document or testimony refers only to one of the defendants, the Court will note that distinction by referring to the defendant specifically identified in the document or testimony.

United States District Court<br>Northern District of California

Defendants: (1) failed to pay him overtime in violation of the FLSA, 29 U.S.C. section 207; (2) failed to pay him overtime in violation of California Labor Code ("Labor Code") sections 510, 1194, and 1198; (3) failed to provide rest and meal breaks in violation of Labor Code sections 226.7, 512, and 558; (4) failed to provide itemized wage statements in violation of Labor Code sections 226 and 1174; (5) failed to timely pay wages on termination in violation of Labor Code section 203; and (6) violated California's Unfair Competition Law, Business and Professions Code sections 17200, *et seq.*[3]

Ortiz was employed as a "Level 4 Manager" at three delivery stations (South San Francisco, San Leandro, and Richmond), from February 1, 2016 until his employment ended on or about December 11, 2016.[4]  (Meckley Decl., ¶ 2, Ex. B, Deposition of Michael Ortiz ("Ortiz Depo.") at 31:2-19; Ortiz Depo. Ex. 1 ("Offer Letter"); Declaration of Michael Ortiz ("Ortiz Decl."), ¶ 2[5]; Murrow Decl., ¶ 5; Declaration of Mark Lopez ("Lopez Decl."), ¶ 3.)  Ortiz acknowledged that he accepted "employment with Golden State FC, LLC under the terms set forth in this letter," which included a statement that his position was exempt from overtime pay.  (Offer Letter at 1-2; *see also* Meckley Decl., Ex. B, Ortiz Depo. at 33:2-7.)

The job description for Ortiz's position refers to Amazon and states

> Our Shift Managers are responsible for the day-to-day operations of delivery stations in the Amazon network, including inbound, outbound, and sortation operations.  They will actively engage with site and regional operations leadership to implement new operational improvements and new services.  We expect our

---

[3]    Ortiz also alleged that Defendants failed to pay him and other class members the minimum wage in violation of the FLSA, 29 U.S.C. section 206.  Defendants argued they were entitled to summary judgment on this claim because the record shows Ortiz was compensated above the federal minimum wage for each hour worked.  (*See* Declaration of Erick Meckley ("Meckley Decl."), ¶ 3, Ex. C (Ortiz's Responses to Golden State Interrogatory No. 1); Declaration of Amanda Murrow ("Murrow Decl."), ¶ 6.)  At the hearing, Ortiz conceded he could not prevail on this claim.  (Dkt. No. 132, Hearing Transcript ("Tr.") at 6:2-17.)  Accordingly, the Court GRANTS Defendants' motion on that claim.

[4]    Defendants include facts about the circumstances surrounding Ortiz's termination.  Those facts are not relevant to the issues presented by this motion, and the Court has not considered them.

[5]    Defendants do not object to this paragraph of Ortiz's declaration, but they object to other statements on the basis that it is a "sham affidavit."  The Court will address those objections throughout this Order.

United States District Court
Northern District of California

managers to continually identify ways to improve our operations.

(Meckley Decl., Ex. B, Ortiz Depo. at 134:1-13; Ortiz Depo. Ex. 2 ("Job Description" at 1).)

The Job Description also outlines a shift manager's key job duties as:

- Oversee the delivery of Amazon orders to customers

- Build, optimize, and assign delivery routes on your shift

- Communicate with and respond to Amazon Customer Service associates on delivery exceptions and requests

- Support Amazon operations leadership team in daily operations management of the delivery station, including route assignment, leading meetings, and communicating with internal and external suppliers.

- Troubleshoot problems through to resolution, escalating as necessary

- Review and update SOPs as required

- Participate in Lean/Kaizen, Black Belt, and other Operational Excellence initiatives

- Ensure compliance throughout the site to global process standards and work on continuous improvement initiatives

(Job Description at 1.)

Ortiz testified that some, but not all, of the responsibilities listed in the job description were consistent with his understanding of his responsibilities.  (Meckley Decl., Ex. B, Ortiz Depo. at 134:2-135:23.)  Ortiz also testified that a shift assistant and a "Tier 2" associate reported to him, that the station manager was on site part of the time, and that occasionally an area manager was present at a delivery station.  (*Id.*, at 57:13-58:18, 59:24-60:9, 114:11-12.)  Ortiz testified that, in general, he was the only shift manager on duty at the San Leandro and Richmond facilities.  (*Id.*, at 196:20-197:3.)

The Court will address additional facts as necessary in the analysis.

**ANALYSIS**

A.    **Legal Standard Applicable to Motions for Summary Judgment.**

"A party may move for summary judgment, identifying each claim or defense … on which

1    summary judgment is sought." Fed. R. Civ. P. 56(a).  A principal purpose of the summary

2    judgment procedure is to identify and dispose of factually unsupported claims.  *Celotex Corp. v.*

3    *Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment, or partial summary judgment, is

4    proper "if the movant shows that there is no genuine dispute as to any material fact and the movant

5    is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "In considering a motion for

6    summary judgment, the court may not weigh the evidence or make credibility determinations, and

7    is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v.*

8    *Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514

9    F.3d 878, 884-85 (9th Cir. 2008).

10       The party moving for summary judgment bears the initial burden of identifying those

11   portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue

12   of material fact.  *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c).  An issue of fact is

13   "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-

14   moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material"

15   if it may affect the outcome of the case. *Id.* at 248.  Once the moving party meets its initial

16   burden, the non-moving party must "identify with reasonable particularity the evidence that

17   precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting

18   *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)); *see also* Fed. R. Civ. P. 56(c)(3)

19   ("The court need consider only the cited materials, but it may consider other materials in the

20   record.").  If the non-moving party fails to point to evidence precluding summary judgment, the

21   moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.

22       Ortiz will have the initial "burden of proving [he was] not properly compensated for work

23   performed." *Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 25, 40 (2014).  The issue of whether

24   an employee is subject to an exemption is an affirmative defense, and Defendants will bear the

25   burden of proving that defense if the matter proceeds to trial.  *Id.  See also Bargas v. Rite Aid*

26   *Corp.*, 245 F. Supp. 3d 1191, 1210 (C.D. Cal. 2017).  Therefore, in order to prevail on their

27   motion, Defendants must establish there are no genuine issues of disputed facts about whether

28   Ortiz is exempt. *Celotex*, 477 U.S. at 322-23 ("the plain language of Rule 56(c) mandates the

United States District Court
Northern District of California

4

1   entry of summary judgment … against a party who fails to make a showing sufficient to establish

2   the existence of an element essential to that party's case, and on which that party will bear the

3   burden of proof at trial").  *See also Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099,

4   1102 (9th Cir. 2000) (setting forth burdens of production and persuasion of moving and non-

5   moving parties dependent upon which party has ultimate burden of persuasion at trial).

6   **B.      The Executive Exemption.**

7          Under both the FLSA and the California Labor Code, an employee is entitled to overtime

8   pay, unless an employer establishes the employee is subject to a statutory exemption.  *See Solis v.*

9   *Washington*, 656 F.3d 1079, 1083 (9th Cir. 2011); *Heyen v. Safeway Inc.*, 216 Cal. App. 4th 795,

10  816 (2013).  Defendants contend Ortiz falls within the executive exemption under the FLSA and

11  the Labor Code.  *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.100; Cal. Lab. Code § 515; 8 Cal.

12  Code Regs. § 11070 ("Wage Order 7-2001").  Wage Order 7-2001 sets forth six elements that an

13  employer must satisfy to show an employee is subject to that exemption.  The FLSA sets forth

14  four elements that an employer must satisfy to show the employee is subject to the exemption.[6]

15  Defendants must show that each element is satisfied to show the exemptions apply to Ortiz.

16  *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir. 2002); *Heyen*, 216 Cal. App. 4th at

17  817.

18         Under California and federal law, courts had construed the exemptions narrowly.  *See, e.g.,*

19  *Solis*, 655 F.3d at 1083; *Peabody v. Time Warner Cable, Inc.*, 59 Cal. 4th 662, 667 (2014).

20  However, the United States Supreme Court recently rejected that "principle as a useful guidepost

21  for interpreting the FLSA," reasoning that the FLSA "gives no 'textual indication' that its

22  exemptions should be construed narrowly" and that it had "no license to give the exemption

23  anything but a fair reading."  *Encino Motorcars, LLC v. Navarro*, __ U.S. __, 138 S. Ct. 1134,

24  1142 (2018).

25

26  ──────────────────────

[6]       Under federal and state law, the last element relates to the amount of salary an employee
27  must receive to qualify for the exemption.  Ortiz does not dispute that Defendants can satisfy that
    element of both the federal and state exemptions.  The Court will set forth the text of the
28  remaining federal and state law elements in its analysis.

United States District Court
Northern District of California

**C.     The Court Grants, in Part, and Denies, in Part, Defendants' Motion.**

Defendants argue that the undisputed facts show Ortiz satisfies the federal and state requirements for the executive exemption to apply to his claims for unpaid overtime.[7] Ortiz, in turn, argues there are disputes of fact on many of the exemptions' elements, which could lead a reasonable jury to conclude that he was not a bona fide manager and, instead, functioned more as a "working foreman." *See Heyen*, 216 Cal. App. 4th at 821-22.

**1.     Management of Customarily Recognized Department and Customarily and Regular Direction of Two or More Employees.**

Under Wage Order 7-2001, Defendants must show Ortiz's "duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof[.]" 8 Cal. Code Regs. § 11070(1)(A)(1)(a). They also must show Ortiz "customarily and regularly directs the work of two or more other employees therein[.]" *Id.* § 10070(1)(A)(1)(b). Similarly, under the FLSA, Defendants must show Ortiz's "primary duty [is] management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof[,]" and that he "customarily and regularly directs the work of two or more other employees[.]" 29 C.F.R. § 541.100(a)(2)-(3).[8]

At the hearing, Ortiz conceded there were no factual disputes about whether the night shift at the delivery facilities constitute a "customarily recognized department or division." (Tr. at 3:15-19.) Ortiz also conceded there were no factual disputes about the number of employees at issue. (*Id.* at 5:3-12.)

"Management" may include activities such as:

> "[i]nterviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the

---

[7]     The parties agree the remaining state law claims depend on the viability of the state overtime claim. *See, e.g., United Parcel Serv. Wage and Hour Cases*, 190 Cal. App. 4th 1001, 1013-14 (2010) ("*In re UPS*"). Accordingly, the Court focuses its analysis on Ortiz's overtime claims.

[8]     When the Court cites to the federal regulations, it is to the current version.

United States District Court
Northern District of California

1

2           purpose of recommending promotions or other changes in their
            status; handling their complaints and grievances and disciplining
3           them when necessary; planning the work; determining the
            techniques to be used; apportioning the work among the workers;
4           determining the types of materials, supplies, machinery or tools to
            be used or merchandise to be bought, stocked and sold; controlling
            the flow and distribution of materials or merchandise and supplies;
5           providing for the safety of the [employees] and the property."

6    *Batze v. Safeway, Inc.*, 10 Cal. App. 5th 440, 472-73 (2017) (quoting *Heyen*, 216 Cal. App. 4th at

7    819 (internal citation omitted)).

8           In his responses to Golden State's requests for admission, Ortiz admitted that he "managed

9    a team of between 80 to 100 employees."  (Meckley Decl., ¶ 3, Ex. D (Ortiz Resp. to Golden State

10   RFA 1).)  Ortiz also stated on two resumes that his duties for Amazon included "[f]ostering

11   employee growth and managing a sortation team of 80-100 from unload to receive to stow to route

12   planning and assignments[,] "[i]ncreasing induction rates from 60-150% while driving down

13   quality errors," "[c]reating a new process for preloading delivery vans [and] [d]eveloping all

14   training content and utilizing feedback to make informed process changes."  (Meckley Decl., Ex.

15   B, Ortiz Depo. at 147:19-148:18, 152:18-157:24, 177:11-18; Ortiz Depo. Exs. 5, 6.)  Those

16   statements support a conclusion that the position was managerial in nature.  *See Patel v. Nike*

17   *Retail Servs.*, No. 14-cv-04781-RS, 2015 WL 3413429, at *6-8 (N.D. Cal. May 27, 2015) (noting

18   plaintiff characterized her work as managerial on resume and engaged in tasks that would be

19   considered exempt, but finding disputed issues of fact on whether plaintiff was "primarily

20   engaged" in exempt work); *Wilbur v. Sligan Containers Corp.*, No. 06-cv-02181-MCE-EFB, 2008

21   WL 3863700, at *6 (E.D. Cal. Aug. 19, 2008) (noting that statements on plaintiff's resume

22   supported conclusion that position included activities that satisfied several "management criteria

23   under 29 C.F.R. § 102").

24          Ortiz's admissions that he "managed" a team are supported by his deposition testimony.

25   For example, Ortiz testified that he would assign labor roles for the night shift and advised the

26   Tier 1 associates when to take lunches and breaks.  Ortiz also testified that "once we saw certain

27   people were better at certain tasks than others, we would assign them to that type of a task."

28
                                                7

United States District Court
Northern District of California

1   (Meckley Decl., Ex. B, Ortiz Depo. at 80:25-81:3, 87:19-88:9, 89:11-90:12, 98:20-99:4.)  He also

2   conducted "stand-up" meetings at which he and the other employees discussed opportunities and

3   challenges and which he sometimes used for coaching opportunities.  Ortiz also prepared a hand-

4   off report at the end of the shift and would do a "GEMBA walk" that consisted of setting forth

5   information on a white-board about issues that arose during the shift.  (*Id.* at 81:4-8, 82:13-83:14,

6   108:8-20.)  Ortiz also testified that he could and did discipline employees during his shift, would

7   counsel employees about work performance, and made recommendations to elevate an employee's

8   status based on performance.  (*Id.* at 103:4-106:22, 108:24-110:12, 159:10-160:9.)

9        At the hearing, Ortiz agreed that he engaged in "some supervisory-type tasks" but argued

10   that "those tasks were … minimal in comparison to the massive amount of time he spent"

11   performing manual labor.  (Tr. at 9:3-13.)  The Court concludes it is undisputed about that Ortiz

12   engaged in tasks that normally would be considered "managerial" and, thus, exempt.  However,

13   Ortiz also testified that during his shift he would replace batteries, move pallets and boxes, "work

14   in the path," and do the same tasks Tier 1 associates were assigned, such as unloading and sorting

15   and moving and staging racks for drivers.  (Meckley Decl., Ex. B, Ortiz Depo. at 81:9-82:18.)

16   Defendants do not dispute those types of tasks would, in general, be considered non-exempt.  *Cf.,*

17   *Heyen*, 216 Cal. App. 4th at 810, 821, 828-29 (non-exempt work often involves "work of the same

18   nature as that performed by … nonexempt subordinates" and noting that bagging groceries,

19   ringing sales, and unloading trucks and unpacking merchandise, among other tasks, were "non-

20   exempt" work).

21        The Court will address the issues that form the crux of the dispute – whether Ortiz was

22   "primarily engaged in duties that meet" the test of Wage Order 7-2001 and whether his "primary

23   duty" under the FLSA was "management" – in Sections C.4 and C.5, *infra.*

24        **2.    Authority to Hire and Fire Employees.**

25        Under Wage Order 7-2001, Defendants must show Ortiz had "the authority to hire or fire

26   other employees or [that his] suggestions and recommendations as to the hiring or firing and as to

27   the advancement and promotion or any other change of status of other employees will be given

28   particular weight[.]"  8 Cal. Code Regs. § 11070(1)(A)(1)(c).  Similarly, under the FLSA,

United States District Court
Northern District of California

1   Defendants must show Ortiz had "the authority to hire or fire other employees or [that his]

2   suggestions and recommendations as to the hiring, firing, advancement, promotion or any other

3   change of status of other employees are given particular weight."  29 C.F.R. § 541.100(a)(4).

4        In the *Wilbur* case, the court concluded that although the plaintiff did not have the power to

5   hire or fire employees, the undisputed evidence showed the defendant "relied on" the plaintiff's

6   suggestions and recommendations on employment decisions.  For example, the evidence showed

7   that the plaintiff completed employee evaluations.  One of defendant's department managers

8   testified that he "afforded great (and usually dispositive) weight to the evaluations and

9   recommendations" from employees in plaintiff's position.  The court concluded those facts were

10  sufficient to show the defendant satisfied these elements of the federal and state exemptions.  2008

11  WL 3863700, at *6-7, *9-*10.

12       Ortiz attests that "[a]ll hiring, firing, disciplinary, and promotion decisions were made by

13  human resources.  I did not have the authority to hire, fire, promote, or discipline any employees."

14  (Ortiz Decl., ¶ 9.)  Defendants put forth evidence that Level 4 Shift Mangers did have the

15  authority to hire associates and that Ortiz had the authority to fire associates.  (Murrow Decl., ¶ 9;

16  Lopez Decl., ¶ 4; *see also* Meckley Decl., ¶ 6, Ex. G (Deposition of Diego Nevado at 66:23-67:14)

17  (Shift Managers are given the opportunity to interview candidates and make recommendations for

18  employment for employees subordinate to their position)).)  Defendants also put forth evidence

19  that Ortiz completed a training session entitled "Making Hiring Decisions – AMZL."  (Murrow

20  Decl., ¶ 8, Ex. A.)  Taking these facts in the light most favorable to Ortiz, the Court finds they do

21  not present a disputed issue of a *material* fact because Defendants can prevail on this element if

22  Ortiz's recommendations were given particular weight.

23       Under the FLSA, to determine if an employee's suggestions or recommendations are given

24  "particular weight," a court may consider the following non-exclusive factors: "whether it is part

25  of the employee's job duties to make such suggestions and recommendations; the frequency with

26  which such suggestions are made or requested; and the frequency with which the employee's

27  suggestions and recommendations are relied upon."  29 C.F.R. § 541.105.

28       Unlike the testimony presented in the *Wilbur* case, Murrow, Nevado, and Lopez do not

United States District Court
Northern District of California

9

provide specific testimony about the weight that they gave to Ortiz's recommendations or about the weight they gave to recommendations from Level 4 Shift Managers.  *Compare Leatherbury v. C&H Sugar Co.*, 911 F. Supp. 2d 872, 876, 884 (N.D. Cal. 2012) (finding no genuine issue of disputed fact on this element, where employer presented uncontradicted evidence that although employees did not have authority to hire or fire, their opinions were given "a great deal of deference and weight").  There also is no evidence that Ortiz or other Level 4 Shift Managers participated in any form of formal performance evaluations.

However, Ortiz testified that he did recommend that at least one associate was a security risk and "should be let go."  Thereafter, the employee was suspended and did not return to work.  Ortiz also testified that he unilaterally made the decision to send another employee home to de-escalate a conflict.  (Meckley Depo. Ex. B, Ortiz Depo. at 103:8-105:2, 108:24-109:6.)  Ortiz testified that he recommended that an employee at the San Leandro site would be a good addition to the Richmond site but that his recommendation was not followed.  (*Id.* at 109:14-111:3.)  Ortiz also testified that when he worked at the Richmond delivery facility, he made recommendations about whether to advance Tier 1 Associates to Tier 2 status and that "less than half" of his recommendations were accepted.  (*Id.* at 159:10-160:9.)

Taking the facts in the light most favorable to Ortiz, the Court concludes Defendants have shown Ortiz's employment related recommendations were given "particular weight" and concludes that Ortiz has not met his burden to show there are disputed issues of fact on this element of the federal or state exemptions

### 3.    Customarily and Regularly Exercises Discretion and Independent Judgment.

Under Wage Order 7-2001, Defendants also must show that Ortiz "customarily and regularly exercise[d] discretion and independent judgment."  8 Cal. Code Regs. § 11070(1)(A)(1)(d).  That will generally require that an employee engages in "the comparison and evaluation of possible courses of conduct and act[s] or mak[es] a decision after the various possibilities have been considered," *i.e.* "the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance."  *See In re UPS*, 190 Cal. App. 4th at 1024 (2010) (internal quotation and citation

10

omitted).

The phrase "matters of significance means the decision being made must be relevant to something consequential and not merely trivial." *Id.* (internal quotation and citation omitted). In addition, although an employee need not do so constantly, "the exercise of discretion must be more than occasional." *Id.* However, an employee who "merely applies [their] knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specified standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories, with or without the use of testing or measuring devices, is not exercising discretion and independent judgment. … This is true even if there is some leeway in reaching a conclusion[.]" *Id.* (internal citation and quotation omitted).

Ortiz argues that Defendants' procedures were so routinized that they eliminated any need for him to exercise independent judgment and discretion.[9]  (Declaration of Laura Van Note ("Van Note Decl."), ¶¶ 6-9, Exs. E-H.)  Ortiz cites generally to Amazon documents and does not point to specific portions of those documents that show how they limit other employees' discretion and does not explain how they show his discretion and judgment were limited.  It is not a court's task "to scour the record in search of a genuine issue of triable fact." *Keenan*, 91 F.3d at 1279 (quoting *Richards*, 55 F.3d at 251).  Indeed, it does not appear that those documents address his role as a Level 4 Shift Manager.  *See In re UPS,* 190 Cal. App. 4th at 1026-27 (noting that plaintiff relied on procedures that applied to other employees and conceded he was "not aware of any written … methods defining or directing how" plaintiff was "supposed to carry out his functions").[10]

In *In re UPS*, the evidence showed that the plaintiff admitted to the accuracy of his job descriptions.  The responsibilities listed included, among others, "training employees and appraising employee performance; imposing discipline on his own initiative…; 'trouble-shooting'

---

[9]      Ortiz denies that he exercised discretion or independent judgment as a Level 4 Shift Manager.  (Ortiz Decl. ¶ 4.)  Defendants object to that statement on the basis that it is contradicted by his deposition testimony.  The Court SUSTAINS that objection.

[10]      If there are specific portions of those documents that address procedures or methods applicable to a Level 4 Shift Manager, Ortiz did not point Court to specific pages of the documents.  It is not a court's task "to scour the record in search of a genuine issue of triable fact." *Keenan*, 91 F.3d at 1279 (quoting *Richards*, 55 F.3d at 251).

United States District Court
Northern District of California

United States District Court
Northern District of California

for operational inefficiencies, determining their 'root cause' and making appropriate adjustments; [and] developing and implementing 'strategic plans' or 'action plans' for his unit on a monthly basis to improve unit efficiency[.]"  190 Cal. App. 4th at 1025.  The court also noted that because of the manner in which the defendant functioned, the plaintiff's decisions in these areas "could have real consequences to [defendant's] business and general good will with its customers."  *Id.* Therefore, it "perceive[d] no obstacle in concluding as a matter of law that [plaintiff] was customarily and regularly called upon to exercise discretion and judgment in matters of significance to" the defendant.  *Id.*  In the *Wilbur* case, the record demonstrated that: the plaintiff was "generally the highest ranking supervisor" on site; if a production crew was understaffed, the plaintiff decided what employees, if any, to use to cover the shortfall; plaintiff coached, trained, disciplined, and instructed other employees, and "delegate[d] housekeeping on a daily basis." 2008 WL 3863700, at *11.

As in the *Wilbur* case*,* the record shows that Ortiz often was the most senior employee on site.  Similarly, Ortiz's job description includes responsibilities such as: building, optimizing, and assigning delivery routes; communicating "with and respond[ing] to Amazon Customer Service associates on delivery exceptions and requests; "[s]upport[ing] Amazon operations leadership team in daily operations management of the delivery station, …, leading meetings, and communicating with internal and external suppliers"; "[t]roubleshoot[ing] problems through to resolution, escalating as necessary"; and "[r]eview[ing] and update[ing] SOPs as required."  (Job Description at 1.)  Although Ortiz disputes the amount of time he spent on those types of responsibilities, he does not dispute the accuracy of the job description.  Those responsibilities are similar to the responsibilities the court in *In re UPS* found were the types of responsibilities that reflect a measure of independent discretion and judgment.  190 Cal. App. 4th at 1024.

Further, Ortiz testified he "found ways to improve the [induction] process, and we tested those ways and implemented them[.]"  (Meckley Decl., Ex. B, Ortiz Depo. at 153:10-155:2.) Ortiz also stated on his resumes that he created "a new process for preloading delivery vans" and developed "all training content and utiliz[ed] feedback to make informed process changes[.]" (Ortiz Depo. Exs. 5-6.)

1    Lopez attests that "Ortiz had the authority and responsibility to make decisions regarding

2    how to allocate labor and to assign specific jobs to the associates he supervised." (Lopez Decl.,

3    ¶ 5.)  Ortiz's deposition testimony corroborates that statement.  (Meckley Decl., Ex. B, Ortiz

4    Depo. at 87:19-90:12.)  Lopez also attests that those decisions "had significant consequences

5    within the overall operations of" Golden State.  In particular, Lopez attests that "misallocation of

6    labor in a Delivery Station could result in the back-up of product flow in the delivery chain, which

7    would impact all subsequent processes and the workers who performed those subsequent tasks,"

8    leading to operational delays.  (Lopez Decl., ¶ 5.)  Lopez also attests that Ortiz's decisions about

9    allegation of labor could have consequences for worker safety.  (*Id.*)  Ortiz has not refuted those

10   statements.

11        Taking the facts in the light most favorable to Ortiz, the Court concludes Ortiz fails to

12   show there are genuine issues of material fact in dispute as to this element of Wage Order 7-2001.

### 4.    Primarily Engaged in Duties that Meet the Test of the Exception.

14        Under Wage Order 7-2001, Defendants must show Ortiz was "primarily engaged in duties

15   which meet the test of the exemption."  This element is more "exacting" than the "primary duty"

16   element under the FLSA, which the Court addresses below.  *In re UPS*, 190 Cal. App. 4th at 1016.

17   Under Wage Order 7-2001, the term "primarily" means "means more than one-half the

18   employee's work time."  8 Cal. Code Regs. § 11070(2)(K); *see also Ramirez v. Yosemite Water*

19   *Co., Inc.*, 20 Cal. 4th 785, 798 n.4 (1999).  Wage Order 7-2001 also provides that

> [t]he activities constituting exempt work and non-exempt work shall
> be construed in the same manner as such items are construed in the
> following regulations under the Fair Labor Standards Act effective
> as of the date of this order: 29 C.F.R. Sections 541.102, 541.104-
> 111, and 541.115-116.  Exempt work shall include, for example, all
> work that is directly and closely related to exempt work and work
> which is properly viewed as a means for carrying out exempt
> functions.  The work actually performed by the employee during the
> course of the workweek must, first and foremost, be examined and
> the amount of time the employee spends on such work, together
> with the employer's realistic expectations and the realistic
> requirements of the job, shall be considered in determining whether
> the employee satisfies this requirement.

27   8 Cal. Code Regs. § 11070(1)(A)(1)(e).

28        The Court starts with the evidence about how Ortiz actually spent his time.  According to

United States District Court
Northern District of California

13

1   Ortiz, he normally worked ten (10) to twelve (12) hours per day.  (Ortiz Decl., ¶ 3.)  Ortiz testified

2   during his deposition about the amount of time he spent on any given task.  At DSF5, Ortiz spent

3   between nine (9) and eleven (11) hours performing tasks such as unloading trucks, breaking down

4   packages, setting up conveyors and computers, sorting packages, moving bread racks, staging

5   orders, moving bins and staging bread racks, assisting drivers with loading trucks, repacking

6   broken packages and searching for missing packages.  (*See* Opp. at 14:123 (citing Van Note Decl.,

7   ¶ 5, Ex. D, Ortiz Depo. at 121:9-122:4, 122:20-24, 126:1-23).)  Defendants have not disputed that

8   testimony.[11]

9          The Court does not simply consider the amount of time Ortiz spent on any given task.  It

10  also looks to "whether the employee's practice diverges from the employer's realistic

11  expectations[.]"  *Ramirez,* 20 Cal. 4th at 802.  The "key duties" of the shift managers are set forth

12  the Job Description and do not expressly include the types of manual labor Ortiz testified he

13  performed.  A reasonable fact finder could conclude that Defendants' realistic expectations and

14  requirements for the job did not include those tasks.  The Court also can look to "whether there

15  any concrete expression of employer displeasure over an employee's substandard performance,

16  and whether these expressions were themselves realistic given the actual overall requirements of

17  the job."  *Ramirez,* 20 Cal. 4th at 802.

18         For example, in *Korte v. Dollar Tree Stores, Inc.*, the evidence showed the defendant

19  required its store managers to certify they were spending more than 50% of their time on exempt

20  tasks.  No. S-12-541 LKK/EFB, 2013 WL 2604472, at *7-*8 (E.D. Cal. June 11, 2013).  The

21  plaintiff was not always able to make that certification and was counseled about it.  The plaintiff

22  argued that he was forced to do non-exempt tasks because he did not have a freight manager.

23  Although the evidence also showed the defendant suggested he train one of his assistant mangers

24  to do that job, the plaintiff testified that, in his judgment, they could not do that work.  *Id.*, 2013

25  WL 2604472, at *8-*9.  The court concluded the plaintiff's testimony created a genuine issue of

26

27  _____

    [11]    Ortiz cites to additional pages of his deposition that were not included with the excerpts

28  attached as Exhibit D to the Van Note Declaration.  Defendants have not put forth any testimony
    to challenge Ortiz's calculations.

United States District Court
Northern District of California

disputed fact about whether the defendant's expectations and whether its expressions of displeasure with the plaintiff's performance were realistic given the overall requirements of the job. *Id.*, 2013 WL 2604472, at *9.

In *Ramirez,* the California Supreme Court noted that an employee "should not … be able to evade a valid exemption" because of his own substandard performance. *Ramirez,* 20 Cal. 4th at 802. However, Defendants neither argue that Ortiz spent too much time "in the path" doing non-exempt tasks nor put forth evidence to suggest that Ortiz was disciplined or counseled for spending too much time on those types of tasks. Ortiz also testified that he was told by one of his supervisors that "we should work in the path with the associates to help them achieve the desired throughput." (*See* Van Note Decl., Ex. D, Ortiz Depo. at 77:2-16.) *Cf. Heyen*, 216 Cal. App. 4th at 812 (discussing testimony of witness regarding whether employer's expectations were realistic and noting lack of criticism for performing nonexempt tasks a majority of the time as evidence that employer's expectations were not realistic). Instead, Defendants argue that Ortiz testified that he constantly supervised the Tier 1 associates while doing those tasks, rendering them exempt.

In the *Heyen* case, the defendant argued on appeal that the trial court should have classified any hours in which the plaintiff engaged in exempt and non-exempt tasks simultaneously as exempt work. 216 Cal. App. 4th at 798. The court rejected that argument, finding it was "inconsistent with California law." *Id.* "[I]dentical tasks may be 'exempt' or 'nonexempt' based on the purpose they serve within the organization or department" but they cannot be classified as both exempt and nonexempt. *Heyen,* 216 Cal. App. 4th at 822, 826. *See also Patel*, 2015 WL 34133429, at *8 ("California law does not allow the 'concurrent performance' of exempt and non-exempt duties to be credited on the exempt side of an employee's ledger."). This inquiry does not require a fact finder to "peer into" an employee's mind. It requires the fact finder "determine the objective purpose" of the employee's actions. If such actions were taken to 'supervis[e] the employees or contribute to the smooth functioning of the department,'" they can be considered exempt work. "[I]f they were taken for some other reason, they were nonexempt work." *Heyen,* 216 Cal. App. 4th at 822 (internal quotations and citations omitted).

In the *Patel* case, the plaintiff was an assistant manager at one of defendant's retail stores

United States District Court
Northern District of California

and testified that she spent about 80% of her time on the store floor "assisting customers, putting product out to the floor, cleaning, folding, hanging, … ringing up customers, [and] greeting customers[.]" 2015 WL 3413429, at *7.  The court reasoned that "to the extent [plaintiff] was supervising employees while contemporaneously stocking shelves or manning case registers, that time did not count as exempt," and it concluded that the defendant failed to show that the plaintiff's time "'out on the floor' was predominantly made up of managerial tasks." *Id.*, 2015 WL 3413429, at *8.

In contrast, in the *Batze* case on which Defendants rely, the court found that the defendant did show the plaintiffs were "primarily engaged" in exempt duties, even though some of those tasks might be considered non-exempt.  The court upheld the trial court's conclusion that when the plaintiffs went on "store walks," they did so because it was "the chief method a manager uses to determine what is going in the store and where (and with whom) he needs to devote attention." 10 Cal. App. 5th at 481.  The court also found that "walking the aisles and scanning out-of-stock" items was exempt work because it allowed an employee "to fulfill his or her managerial responsibility for determining when and where out-of-stocks occur and minimizing them," *i.e.* it was determined to be "work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions." *Id.* at 480.

Ortiz did testify that while working in the path, he was able to and did monitor the quality of work done by Tier 1 associates and that "[i]n working alongside my colleagues, I would see things that could be improved or things that were wrong." (Meckley Decl., Ex. B, Ortiz Depo. at 95:2-15; *see also id.* at 126:24-127:25.)  However, Ortiz also was questioned about why he engaged in manual labor such as unloading pallets and breaking down packing materials.  Ortiz testified that when he first arrived at the DSF5 facility, he did not perform those tasks but changed his practice because he "didn't want to be there 12 hours."  According to Ortiz, if he had not performed those tasks, "it would have taken longer to get the shift done."  He also testified that the "shifts were running long.  Management wanted us to get the time down so that we didn't have to keep tier one associates and pay them overtime" and that he worked in the path because "the volume was too high for [Tier 1] associates to keep up," *i.e.* "[t]oo many packages, too little time."

1  (Meckley Decl., Ex. B, Ortiz Depo. at 72:15-25; Van Note Decl., Ex. D, Ortiz Depo. at 73:1-21,

2  75:12-76:15.)

3  　　　Based on the existing record, the Court cannot conclude as a matter of law that when Ortiz

4  performed what would normally be considered "non-exempt" work, that work was "directly and

5  closely related to exempt work and work which is properly viewed as a means for carrying out

6  exempt functions," *Batze*, 10 Cal. App. 5th at 480, rather than because Defendants did not have

7  enough non-exempt employees on staff to perform that work.  *Cf. Heyen,* 216 Cal. App. 4th at

8  828-29.  Because the Court cannot conclude as a matter of law that Ortiz was "primarily engaged

9  in duties that meet the test of the exemption," it DENIES Defendants' motion for summary

10  judgment on the state claim for overtime.  For that reason, it also DENIES the motion on Ortiz's

11  claims relating to meal and rest breaks, waiting time penalties, and wage statements, as well as the

12  UCL claim to the extent it is premised on violations of state law.

13  　　　**5.　　FLSA Element 1:  Primary Duty is Management.**

14  　　　The FLSA defines the term "primary duty" to mean the "principal, main, major, or most

15  important duty that the employee performs."  29 C.F.R. § 541.700(a).  In addition,

16  　　　[c]oncurrent performance of exempt and nonexempt work does not
17  　　　disqualify an employee from the executive exemption if the
　　　requirements of [Section] 541.100 are otherwise met.  Whether an
18  　　　employee meets the requirements of [Section] 541.100 when the
　　　employee performs concurrent duties is determined on a case-by-
19  　　　case basis and based on the factors set forth in 541.700.  Generally,
　　　exempt executives make the decision regarding when to perform
20  　　　nonexempt duties and remain responsible for the success or failure
　　　of business operations under their management while performing the
21  　　　nonexempt work.  In contrast, the nonexempt employee generally is
　　　directed by a supervisor to perform the exempt work or performs the
22  　　　exempt work for defined time periods.  An employee whose primary
　　　duty is ordinary production work or routine, recurrent or repetitive
23  　　　tasks cannot qualify for exemption as an executive.

24  29 C.F.R. § 541.106(a).  *Cf.* 29 C.F.R. § 541.700(a).  The Court may consider the following non-

25  exclusive factors to evaluate whether this element has been satisfied:  "[1] the relative importance

26  of exempt duties as compared with other types of duties; [2] the amount of time spent performing

27  exempt work; [3] the employee's relative freedom from direct supervision; and [4] the relationship

28  between the employee's salary and the wages paid to other employees for the kind of non-exempt

United States District Court
Northern District of California

1    work performed by the employee."  29 C.F.R. § 541.700(a).

2            As discussed above, the record shows Ortiz spent more than half his time engaging in

3    activities that could be considered "non-exempt."  Under the FLSA that percentage is not-

4    dispositive.  *See* 29 C.F.R. § 541.700(b).  For example, the Ninth Circuit found that employees

5    who spent 90% percent of their time on nonexempt duties fell within the scope of the executive

6    exemption under the FLSA.  *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1113-14 (9th Cir.

7    2001).

8            In *Baldwin,* the plaintiffs managed a trailer park and argued they were not exempt under

9    the FLSA.  The court stated that it would not presume the executive exemption failed "where, as

10   here, managerial duties are packaged in employment with non-managerial tasks, and the

11   management function cannot readily and economically be separated from the nonexempt tasks."

12   *Id.* at 1114.  Therefore, the court weighed the other factors listed in the regulations.  It determined

13   that the evidence showed plaintiffs' "principal value" to the defendant "was directing the day-to-

14   day operations of the park," including being "on-call twenty-four hours a day to handle

15   emergencies and to exercise their managerial discretion."  *Id.* at 1115.  The court reasoned those

16   facts demonstrated the relative importance of the plaintiffs' managerial tasks in comparison to the

17   manual labor they performed.  *Id.* at 1114-15.  The court also determined that the plaintiffs

18   "frequently had the power to exercise discretionary powers in their management of the park" and

19   did so without constant oversight from the owners.  The court acknowledged that the plaintiffs did

20   have to adhere to company policies and to follow a checklist.  Nonetheless, the court concluded

21   the evidence regarding this factor weighed in favor of a finding that their primary duty was

22   management.  *Id.* at 1115.  Finally, the court found that plaintiffs earned more than non-exempt

23   employees and were eligible for bonus compensation.  The court determined those facts also

24   weighed in favor of concluding that the plaintiffs' primary duty was management.  *Id.* at 1115-16.

25           Similarly, in the *Wilbur* case, the court concluded the plaintiff's "primary duty" was

26   management.  2008 WL 3863700, at *7-*8.  In reaching that conclusion, the court noted that the

27   job description and statements on plaintiff's resume showed he engaged in managerial duties.  The

28   court also relied on the fact that plaintiff admitted that he observed and directed actions of other

United States District Court
Northern District of California

1    employees using his peripheral vision about fifty-percent of the time.  The court reasoned that,

2    although "the percentage of time spent on non-exempt duties [was] of greater importance" to the

3    plaintiff's state law claims, plaintiff's admissions and "other factors" supported a finding that his

4    primary duty was exempt work.  *Id.*, 2008 WL 3863700, at *7.  *See also* 29 C.F.R. § 541.106(b)

5    (setting forth example of assistant manager who serves customers, cooks food, stocks shelves and

6    cleans establishment and noting that assistant manager could supervise employees and serve

7    customers "at the same time without losing the exemption," so long as "the assistant manager's

8    primary duty is management").

9            Ortiz's Job Description focused on managerial type duties, and he focused on those duties

10   in the statements on his resume, to the exclusion of manual labor.  Those facts support a

11   conclusion that Ortiz's "principal value" to the Defendants, as in the *Baldwin* case, was his role in

12   directing the Tier 1 associates.  The record shows that Ortiz often was the only manager on duty at

13   the delivery facilities.  As in the *Wilbur* case, those facts demonstrate Ortiz was relatively free

14   from direct supervision while he was on duty at the delivery facilities.  *Wilbur*, 2008 WL 3863700,

15   at *8 (noting that "[p]laintiff was in charge of a given crew for the duration of his shift").  The

16   undisputed evidence also demonstrates that Ortiz was paid an annual salary of $68,500, or

17   approximately $1,317 per week, whereas an entry level Tier-1 associate earned approximately

18   $14.00 per hour.  (Offer Letter at 1-2; *see also* Meckley Decl., Ex. B, Ortiz Depo. at 33:2-7;

19   Murrow Decl., ¶¶ 6-7.)

20           Taking the facts in the light most favorable to Ortiz, the Court concludes Defendants have

21   shown that that the factors set forth in Section 541.700(a) support a conclusion that Ortiz's

22   primary duty was management, and it concludes Ortiz has not demonstrated a genuine issue of

23   material fact in dispute on this element of the FLSA claim.  Because the Court concludes

24   Defendants have met their burden to prove each element of the executive exemption under the

25   FLSA and concludes Ortiz has not overcome that showing, the Court GRANTS Defendants'

26   motion on Ortiz's claim for overtime under the FLSA.

27   //

28   //

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, Defendants' motion for summary judgment.  The parties shall appear for a further case management conference on June 28, 2019 at 11:00 a.m, and they shall submit an updated joint case management conference statement by June 21, 2019.

**IT IS SO ORDERED.**

Dated: May 24, 2019

_____

JEFFREY S. WHITE
United States District Judge