UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ORTIZ,<br><br>    Plaintiff,<br><br>v.<br><br>AMAZON.COM LLC, et al.,<br><br>    Defendants. | Case No. 17-cv-03820-JSW<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 139 |

On April 13, 2020, the Court issued the following Order under seal. (*See* Dkt. No. 181.) Pursuant to the parties' joint statement that the Order can be filed in the public record in its entirety, the Court does so.

Now before the Court for consideration is the motion for class certification filed by Plaintiff Michael Ortiz ("Ortiz"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and the Court DENIES Ortiz's motion.[1]

**BACKGROUND**

Ortiz, on behalf of himself and a putative class, alleges Defendants misclassified their Level 4 Shift Managers as exempt employees under state law. Ortiz asserts five claims for relief: (1) failure to pay overtime in violation of California Labor Code ("Labor Code") sections 510, 1194, and 1198; (2) failure to provide rest and meal breaks in violation of Labor Code sections 226.7, 512, and 558; (3) failure to provide itemized wage statements in violation of Labor Code sections 226 and 1174; (4) failure to timely pay wages on termination in violation of Labor Code

---

[1] **The Court advises all parties that, going forward, if they file motions to seal, the Court will not accept redacted versions of any document. Rather, the parties shall submit one chambers copy, which contains an unredacted version of the document with the portions to be sealed clearly highlighted. If that document is a declaration with exhibits and some exhibits are sealed and some are not, the chambers copy should consist of the declaration and *all* exhibits in one document.**

1

section 203; and (5) violations of California's Unfair Competition Law, Business and Professions Code sections 17200, *et seq.*

Ortiz argues that Defendants' uniform policies and procedures make this an ideal case for class certification, and he moves to certify a class consisting of: "All persons employed as Level 4 Shift Managers in any of Defendants' Delivery Centers in California at any time between June 2, 2013 and the present."  (Mot at 8:9-10.)

The job description for a Level 4 Shift Manager states:

> Our Shift Managers are responsible for the day-to-day operations of delivery stations in the Amazon network, including inbound, outbound, and sortation operations.  They will actively engage with site and regional operations leadership to implement new operational improvements and new services.  We expect our managers to continually identify ways to improve our operations.

(Dkt. No. 135-3, Declaration of Laura Van Note ("Van Note Decl."), ¶ 23; Dkt. No. 134-4 at ECF p. 139, Van Note Decl., Ex. V (Job Description).)  The Job Description also outlines a Shift Manager's key job duties as:

- Oversee the delivery of Amazon orders to customers
- Build, optimize, and assign delivery routes on your shift
- Communicate with and respond to Amazon Customer Service associates on delivery exceptions and requests
- Support Amazon operations leadership team in daily operations management of the delivery station, including route assignment, leading meetings, and communicating with internal and external suppliers.
- Troubleshoot problems through to resolution, escalating as necessary
- Review and update SOPs [standard operating procedures] as required
- Participate in Lean/Kaizen, Black Belt, and other Operational Excellence initiatives
- Ensure compliance throughout the site to global process standards and work on continuous improvement initiatives.

(Job Description at 1.)

The Court will address additional facts as necessary in the analysis.

**ANALYSIS**

**A.     Applicable Legal Standards.**

Class certification is governed by Federal Rule of Civil Procedure 23 ("Rule 23"). As the moving party, Ortiz bears the burden to show that he meets each Rule 23(a) factor and that he meets at least one factor under Rule 23(b). *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). Ortiz moves to certify the class under Rule 23(b)(3).

Under Rule 23(a), a court may certify a class only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Under Rule 23(b)(3), a court may certify the class if Rule 23(a) is satisfied and if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.[2]

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original). A court must conduct a "rigorous analysis" of the Rule 23 factors, which "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351. However, a court has "no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,

---

[2]     On the last factor is at issue in this case.

3

568 U.S. 455, 466 (2013).

"Class certification is not immutable, and class representative status could be withdrawn or modified if at any time the representatives could no longer protect the interests of the class." *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (citing *Soc. Servs. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 948-49 (9th Cir. 1979)). For reasons that follow, the Court concludes Ortiz meets his burden on the Rule 23(a) factors but fails to meet his burden on the Rule 23(b) factors.

**B.    The Nature of the Claims and Defenses.**

Each of Ortiz's claims depends on his theory that Defendants uniformly and improperly classified all Level 4 Shift Mangers as exempt employees. Defendants, in turn, assert that Ortiz and the putative class members fall within California's executive exemption. *See* 8 Cal. Code Regs. § 11070(1)(A)(1) ("Section 11070" or "Wage Order 7-2001"). To demonstrate that exemption applies, Defendants will be required to show, *inter alia*:

> [an employee's] duties and responsibilities involve the management[3] of the enterprise in which [they are] employed or of a customarily recognized department or subdivision thereof; [an employee] customarily and regularly directs the work of two or more other employees therein; [an employee] has the authority to hire or fire other employees or [that their] suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; [an employee] customarily and regularly exercises discretion and independent judgment; [and an employee] is primarily[4] engaged in duties which meet the test of the exemption[.]

---

[3]    "Management" may include activities such as: "[i]nterviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the types of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property." *Batze v. Safeway, Inc.*, 10 Cal. App. 5th 440, 472-73 (2017) (quoting *Heyen v. Safeway, Inc.*, 216 Cal. App. 4th 795, 819 (1992) (internal citation omitted)).

[4]    The term "primarily" means "means more than one-half the employee's work time." 8 Cal. Code Regs. § 11070(2)(K); *see also Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785,

8 Cal. Code Regs. § 11070(1)(A)(1)(a)-(e).[5]

Section 11070(1)(A)(1)(e) also provides:

> [t]he activities constituting exempt work and non-exempt work shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.102, 541.104-111, and 541.115-116.  Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions.  The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

**C.    Evidentiary Objections.**

   **1.    Ortiz's Objections to Opposition Evidence.**

Ortiz objects to paragraph 5 of the Declaration of Neil Bourbon, to paragraph 8 of the Declaration of Bhavin Jindal, and to paragraph 21 of the Declaration of Jared McConnell.[6]  These putative class members attest they have some responsibility or input regarding disciplining and terminating subordinate employees.  Ortiz objects on the basis that the evidence is vague and misleading, which goes to the weight of the evidence rather admissibility.  The Court OVERRULES Ortiz's objections.

   **2.    Defendants' Objections to Reply Evidence.**

Ortiz submits a job description for a Process Engineer for the European Amazon Logistics Team to show Defendants' procedures are completely standardized and that a culture of standardization exists.  (Reply at 2:16-3:5, citing Dkt. No. 167-1, Reply Declaration of Laura Van Note ("Van Note Reply Decl.") ¶ 9; Dkt. No. 162-2 at ECF pp. 14-16, Van Note Reply Decl., Ex. G.)  Defendants raise two objections to this document: (1) it is irrelevant; and (2) that it was

---

798 n.4 (1999).

[5]    Wage Order 7-2001 also requires a specific salary to qualify for the exemption. Defendants do not suggest that factor could not be established by common proof.

[6]    These declarations can be found at Dkt. Nos. 161-6, 161-8, 161-12, respectively.

5

neither identified nor produced in discovery. The Court SUSTAINS Defendants' objection on the basis that the exhibit was not identified by Ortiz and was not produced.[7]

Defendants object to specific portions of the deposition of Lawrence Elijah Ramirez, Jr. ("Ramirez Depo.") on the basis that the testimony is irrelevant because it relates to Ramirez's role as a Level 3 associate, which is not a position within the putative class. (*See* Van Note Reply Decl., ¶ 4; Dkt. No. 166-7, Van Note Reply Decl., Ex. E (Ramirez Depo).) The Court SUSTAINS Defendants' objection and will not consider the testimony located at pages 17:22-25, 36:22-24, 41:15-18, 41:25-42:2, 55:15-17, and 63:8-11 of the Ramirez deposition.

Defendants also object to portions of the depositions of Sennai Merid, Mr. Martin, James Lao, William Hedin, and Mr. Ramirez because Ortiz does not always cite to the question and the complete answer. (*See* Van Note Reply Decl., ¶¶ 3-7; Dkt. Nos. 166-3 through 166-7, Van Note Reply Decl., Exs. A-E (Merid, Martin, Lao, Hedin and Ramirez Depositions).) Defendants argue the Court should exclude those citations or should supplement the citations with the complete question and answer, which Defendants submitted with their objections. (*See* Dkt. No. 170, Responses and Objections at 3; Dkt. Nos. 169-4, 169-6, 169-8, 169-10, and 170-1 (additional excerpts from Martin, Lao, Hedin, Ramirez and Merid depositions).)

The Court DENIES Defendants' request to exclude the cited testimony and will consider the complete question and answers to resolve the motion.[8]

**D.   The Rule 23(a) Factors.**

---

[7]   The Job Description refers to global process standards, but one Michael Martin, a witness for Ortiz, disputes such standards exist. (Van Note Reply Decl., ¶ 4; Dkt. No. 166-4, Van Note Reply Decl., Ex. B (Deposition of Michael Martin ("Martin Depo.") at 145:1-11).)

[8]   On occasion, Defendants also failed to include a question in their citations to excerpts of deposition testimony. Although Ortiz did not object, the Court will consider the question and the complete answer where this has occurred.

**The Court also ORDERS the parties to file a joint submission of the deposition excerpts submitted on reply that includes the excerpts submitted by Ortiz and the additional excerpts submitted by Defendants. The parties may identify which party submitted specific pages. The Court orders the parties to make this submission for the benefit of a reviewing court in the event this Order is appealed.**

### 1. Numerosity.

Rule 23(a)'s "numerosity" factor requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. 338. Although "[t]here is no absolute minimum number of plaintiffs necessary to demonstrate that the putative class is so numerous so as to render joinder impracticable[,] … [j]oinder has been deemed impracticable in cases involving as few as 25 class members[.]" *Breeden v. Benchmark Lending Grp., Inc.*, 229 F.R.D. 623, 628-29 (N.D. Cal. 2005) (internal citations omitted) (finding joinder was impractical where there were over 236 members in the putative class). Defendants do not dispute that the class consists of at least 150 members. The Court concludes Ortiz has met his burden on this factor.[9]

### 2. Commonality.

Commonality requires that there be "questions of fact and law common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)'s commonality factor is construed permissively. *See, e.g., Hanlon*, 150 F.3d at 1019. To satisfy this factor, Ortiz must do more than show he and the putative class members "suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 350 (internal quotations and citations omitted). Rather, the "claims must depend on a common contention … of such a nature that it is capable of classwide resolution," *i.e.*, "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification" is whether a class-wide proceeding has "the capacity … to generate common answers apt to drive the resolution of the litigation." *Id.* (emphasis, internal quotation and citation omitted). A "single common question" can satisfy this factor. *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (quoting *Wal-Mart*, 564 U.S. at 359 but omitting internal quotations and brackets) ("*Wang IV*").[10]

---

[9] Ortiz cites to Exhibit Z of the Van Note declaration to show the class is sufficiently numerous, but the exhibit does not contain any information about the number of class members. (*See, e.g.*, Dkt. No. 136-11.) Because Defendants do not dispute this factor, the Court concludes this omission is not material.

[10] The *Wang* case has a long procedural history. Ortiz relies heavily on *Wang v. Chinese*

At trial, Defendants will bear the burden to show the executive exemption applies. However, Ortiz bears the burden on this motion to show he can satisfy the commonality factor. *See, e.g., Marlo v. United Parcel Serv.*, 639 F.3d 942, 947 (9th Cir. 2011); *see also Patel v. Nike Retail Servs., Inc.*, No. 14-cv-04781-RS, 2016 WL 1241777, at *3, *5 (N.D. Cal. Mar. 29, 2016). Ortiz argues that whether Level 4 Shift Managers are non-exempt is a common question that can generate a common answer. Defendants argue that Ortiz cannot show each element of the executive exemption can be established by common proof. However, most of the cases on which Defendants rely focus on predominance rather than on commonality. *See, e.g., Marlo*, 639 F.3d at 946 (affirming district court's decision to decertify class on the basis that plaintiff failed to show common issues predominated); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 955, 958-59 (9th Cir. 2009) (concluding district court abused its discretion in finding common issues predominated); *Vinole v. Countrywide Home Loans Inc.*, 571 F.3d 935, 945-48 (9th Cir. 2009) (affirming district court's conclusion that common issues did not predominate).

In *Wang IV*, the Ninth Circuit reversed and remanded the case to the district court so that it could determine whether the plaintiffs had demonstrated the commonality and predominance factors in light of *Wal-Mart*. 737 F.3d at 541. On remand, the district court noted that the plaintiffs submitted declarations that showed they routinely were required to work more than eight (8) hours daily and more than 40 hours weekly regardless of job title and showed that they were not paid overtime. *Wang v. Chinese Daily News, Inc.*, No. 2:04-cv-01498–CBM (AJWx), 2014 WL 1712180, at *3 (C.D. Cal. Apr. 15, 2014) ("*Wang V*"). The court determined that evidentiary record was "'significant proof' that [the defendant's] treatment of class members was consistent, not subject to discretion, and that the entire class was injured by [the defendant's] non-payment of

---

*Daily News, Inc.*, 231 F.R.D. 602 (C.D. Cal. 2005) ("*Wang I*"). In that opinion, the district court granted the plaintiffs' motion for class certification. After further proceedings, including a trial and judgment in favor of plaintiffs, the Ninth Circuit affirmed. *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743 (9th Cir. 2010) ("*Wang II*"). The Supreme Court vacated that opinion and remanded to the Ninth Circuit for reconsideration in light of *Wal-Mart*. *Chinese Daily News, Inc. v. Wang*, 565 U.S. 801 (2011) ("*Wang III*"). The Court addresses the subsequent Ninth Circuit and district court opinions in this Order.

8

overtime premiums" which the court determined was a common question capable of generating common answers. *Id.* The court also rejected the defendant's argument that some employees were not exempt because the plaintiffs limited the class to non-exempt employees. *Id.*; *see also id.* at 2014 WL 1712180 at *3-*4 (noting additional common issues).

Similarly, in *Benedict v. Hewlett Packard Co.*, another case on which Defendants rely, the court concluded the plaintiffs met their burden on the commonality factor. 314 F.R.D. 457, 470 (N.D. Cal. 2016). The court agreed that the record suggested "substantial variation in the work performed among the purported class members—including details pertinent to the exemptions." *Id.* The court reasoned that "[a]lthough members of the putative class have had divergent work experiences, Plaintiffs are all identically classified employees of the same company, share a set of generic job descriptions, and all raise identical legal questions," which it determined was sufficient to satisfy the commonality factor. *Id.; cf. Martinez v. Joe's Crab Shack Holdings*, 231 Cal. App. 4th 362, 380 (2014) (noting that whether defendant uniformly misclassified employees as exempt "is by nature a common question eminently suited for class treatment") (quoting *Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1034 (2012)).[11]

In *Patel*, the court concluded the plaintiff met her burden on the commonality factor by challenging the defendant's ability to satisfy three of the factors necessary to establish certain state law exemptions. "Evaluating the 'truth or falsity' of the three narrower questions–whether class members customarily and regularly exercised discretion and independent judgment, managed a customarily recognized department or subdivision of Nike, and primarily were engaged in exempt

---

[11] Defendants rely on *Chavez v. Lumber Liquidators, Inc.*, No. 09-cv-04812-SC, 2012 WL 1004850 (N.D. Cal. Mar. 26, 2012) and *Novak v. Boeing Co.*, No. SACV 09-01011-CJC (ANx), 2011 WL 7627789 (C.D. Cal. Dec. 19, 2011). In *Chavez*, the court did find commonality lacking, but it relied on *In re Wells Fargo* and *Vinole*, which as noted above addressed the issue of predominance. *See Chavez*, 2012 WL 1004850, at *4-*5. Although the *Novak* court concluded commonality was lacking, when it addressed the plaintiffs' arguments about why certain exemptions did not apply, it stated it would have to engage in "individualized rather than common inquiry." *Novak*, 2011 WL 7627789, at *4. The Court finds these cases less persuasive on the issue of commonality than *Wang V* and *Benedict* and, for that reason, declines to follow them on this issue.

activities–will resolve issues 'central to the validity of each claim in one stroke.'" *Patel*, 2016 WL 1241777, at *6 (quoting *Wal-Mart*, 564 U.S. at 350); *see also Zackaria v. Wal-Mart Stores, Inc.*, No. EDCV 12-1520 FMO, 2015 WL 2412103, at *9 (C.D. Cal. May 18, 2015) (concluding plaintiff satisfied commonality factor and stating "the answer to the question of whether the [employees] follow these policies and guidelines will drive the resolution of the litigation" because "whether the other essential questions in this case (*e.g.*, do … job duties require independent judgment, are [employees] primarily engaged in exempt duties) are susceptible to common proof hinges upon the answer to that first common question").

Ortiz submits declarations from four putative class members who attest they routinely worked more than 40 hours per week and were not paid overtime. (Van Note Decl., ¶¶ 2-4, 6; Dkt. No. 135-4 at ECF pp. 2-4, Van Note Decl., Ex. A (Declaration of William Hedin ("Hedin Decl."), ¶¶ 3, 10); Dkt. 135-4 at ECF pp. 6-8, Van Note Decl., Ex. B (Declaration of Sennai Merid ("Merid Decl."), ¶¶ 3, 12); Dkt. No. 135-4 at ECF pp. 10-12, Van Note Decl., Ex. C (Declaration of Michael Martin ("Martin Decl."), ¶¶ 3, 11); Dkt. No. 135-4 at ECF pp. 18-20, Van Note Decl., Ex. E (Declaration of James Lao ("Lao") Decl., ¶¶ 3, 10).)[12] The Job Description set forth a Level 4 Shift Manager's general duties, and Defendants have not put forth evidence to show that job description varied among shifts or delivery centers. This evidence is similar to the evidence submitted in *Wang V* and *Benedict*. The issue of whether Level 4 Shift Managers were primarily engaged in duties that were exempt is a question that could generate a common answer and, as in *Patel*, to the extent the evidence shows variations in how putative class members performed those duties, that impacts the Court's predominance analysis. *Patel*, 2016 WL 1241777, at *6.

Accordingly, the Court concludes Ortiz has met his burden on the commonality factor.

### 3. Typicality.

Typicality requires that "the claims or defenses of the representative parties are typical of

---

[12] The declarations submitted by Defendants do not clearly specify how many hours the witness may work in each day or in each week week. Those declarations are located at Docket Nos. 161-6 (Bourbon), 162-4 (Robert Irvin), 161-8 (Jindal), 162-6 (Jordan Mootz), 161-10 (Kevin Tang), 162-8 (Michael St. Jean Troy), 161-12 (McConnell), 162-10 (Lawrence Ramirez).)

the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality factor also is applied permissively. *Hanlon*, 150 F.3d at 1020. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.*; *see also Lozano*, 504 F.3d at 734 ("Under Rule 23(a)(3) it is not necessary that all class members suffer the same injury as the class representative."). Typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)).

It is undisputed that Ortiz was a Level 4 Shift Manager during the time in question. He claims to have suffered the same injuries as putative class members. Defendants argue that Ortiz is not typical because the putative class members worked at different facilities on different shifts, which give rise to differences between Ortiz and other putative class members. However, this factor requires only that Ortiz's claims be reasonably co-extensive with those of the class. The Court concludes the differences raised by Defendants do not render Ortiz atypical of putative class members. *Hanlon*, 150 F.3d at 1020.

Defendants also argue Ortiz is not typical because the Court found against him on all but one of the factors necessary to show he qualifies for the executive exemption. "Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become a focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). However, Defendants do not suggest how the Court's findings against Ortiz would threaten to become a focus of the litigation. *Cf. Patel*, 2016 WL 1241777, at *6 (finding plaintiff met typicality factor even where court granted summary judgment against her on four of six factors relevant to executive exemption).

Accordingly, the Court concludes Ortiz has met his burden to satisfy the typicality factor.

**4.     Adequacy of Representation.**

Ortiz asks that his counsel, members of Scott Cole & Associates, be appointed as class

11

1   counsel.[13]  Defendants challenge Ortiz's ability to show he and his counsel will adequately

2   represent the interests of the class.  Rule 23(a)(4) requires that "the representative parties will

3   fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Rule 23(g) sets

4   forth factors for courts to consider in determining whether class counsel is adequate.  "To satisfy

5   constitutional due process concerns, absent class members must be afforded adequate

6   representation before entry of a judgment which binds them."  *Hanlon*, 150 F.3d at 1020.

7       In order to determine whether the adequacy prong is satisfied, the Court considers two

8   questions.  First, "[d]o the representative plaintiffs and their counsel have any conflicts of interest

9   with other class members[?]"  *Staton v. Boeing, Co.*, 327 F.2d 938, 957 (9th Cir. 2003).  There is

10  nothing in the record to suggest a conflict of interest exists between Ortiz, his chosen counsel, and

11  the class.  Second "will the representative plaintiffs and their counsel prosecute the action

12  vigorously on behalf of the class?"  *Id.*  To determine class counsel's adequacy, courts must

13  consider the work counsel have done in the action, their experience in similar actions, their

14  knowledge of applicable law, and the resources they are able to commit.  Fed. R. Civ. P.

15  23(g)(1)(A)(i)-(iv).  The Court concludes that Ortiz has demonstrated his counsel have knowledge

16  of the applicable laws and have the requisite experience and resources to prosecute these claims.

17  (*See* Dkt. No. 135-1, Declaration of Scott Edward Cole ("Cole Decl"), ¶¶ 3-6, 8; Dkt. No. 135-2,

18  Cole Decl., Ex. A.)

19      Defendants argue that counsel's litigation tactics and performance show they are

20  inadequate.  Courts may consider "any other matter pertinent to counsel's ability to fairly and

21  adequately represent the interests of the class," including counsel's "reputation built upon past

22  practice" and "counsel's competence displayed by present performance."  *Abikar v. Bristol Bay*

23  *Native Corp.*, No. 17-cv-1036, 2018 WL 6738017, at *13 (S.D. Cal. Dec. 21, 2018) (citing Rule

24  23(g)(1)(B)).  As an example, Defendants note Ortiz failed to identify Mr. Merid, Mr. Martin, Mr.

25

---

[13]  Cesar Alvarado, Esq. also is listed as counsel for Ortiz on the docket.  There is nothing in the record on this motion that addresses Mr. Alvarado's adequacy to represent the class.  Ortiz has not met his burden as to Mr. Alvarado, and the Court's ruling on appointment of class counsel is limited to the Cole firm.

12

1    Lao, and Mr. Hedin as witnesses, which prompted Defendants to move to reopen discovery. (*See*

2    Dkt. No. 153, Order Granting Motion to Reopen.) Defendants also cite to earlier discovery

3    disputes to support this argument.[14]  By way of example, on May 25, 2018, Magistrate Judge

4    James issued an Order relating to the production of Ortiz's cell phone records and his deposition.

5    In that Order, Judge James reprimanded Ortiz and his counsel and reserved the right to impose

6    sanctions for future discovery violations.[15] (Dkt. No. 82, Discovery Order at 5:2-4.) Judge James

7    subsequently issued an Order to Show Cause regarding counsel's conduct in discovery and found

8    monetary sanctions were appropriate but stayed imposition of sanctions. (Dkt. Nos. 87, 90.)

9        The Court does not discount Judge James' views of how, at times, Ortiz and his counsel

10   conducted themselves during discovery. However, neither she nor Judge Ryu, who now

11   supervises discovery, have seen fit to impose sanctions on Ortiz or on his counsel. The Court

12   concludes Ortiz has met his burden to show he and his counsel will adequately represent the

13   interests of the class.

14   **E.  The Rule 23(b) Factors.**

15       **1.  Predominance.**

16   "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

17   cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S.

18   591, 623 (1997). The focus is "on the relationship between the common and individual issues.

19   When common questions present a significant aspect of the case and they can be resolved for all

20

---

[14]  Defendants note that James Lao testified he did not recall signing his declaration and attest Ortiz's counsel failed to respond to correspondence asking for confirmation that Lao had signed it. (Dkt. No. 163-3, Declaration of Michelle L. Maryott ("Maryott Decl."), ¶ 5; Dkt. No. 161-16, Ex. D (Deposition of James Lao ("Lao Depo.") at 102:17-104:10); Dkt. No. 164, Declaration of Megan Cooney, ¶¶ 2-4.) On reply, Ortiz's counsel attests they contacted and interviewed Mr. Lao and received the electronically signed declaration. (Van Note Reply Decl., ¶ 2.) Defendants also note that Ortiz submitted the declaration he filed in support of the motion for summary judgment, although the Court sustained objections to portions of that declaration. (*See* Dkt. No. 133, Order on Motion for Summary Judgment at 11 n.9.) The Court concludes these facts do not demonstrate Ortiz or his counsel are inadequate.

[15]  It is not clear that this conduct can be attributed solely to counsel. (Discovery Order at 3:9-4:1 (addressing Ortiz's reasons and timing for cancelling his deposition).)

13

1    members of the class in a single adjudication, there is clear justification for handling the dispute
2    on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.  As some courts
3    have stated, there is a "rough hierarchy of certain types of evidence" to determine predominance in
4    a misclassification case.  *See, e.g., Sinohui v. CEC Entm't, Inc.*, No. EDCV 14-2516-JLS (KKx),
5    2016 WL 3475321, at *3 (C.D. Cal. Mar. 16, 2016) (quoting *Zackaria*, 2015 WL 2412103, at *9);
6    *see also Vinole*, 571 F.3d at 946.

7        Ortiz relies heavily on the fact that Defendants have a blanket policy that treats Level 4
8    Shift Managers as exempt employees.  That fact *alone* cannot satisfy the predominance factor.
9    *See, e.g., In re Wells Fargo*, 571 F.3d at 957, 959 (holding that district court abused its discretion
10   in certifying class by relying on uniform exemption policy "to the near exclusion of other
11   factors"); *Sinohui*, 2016 WL 3475321, at *3 (placing those types of policies at bottom of
12   evidentiary hierarchy); *Patel*, 2016 WL 1241777, at *7 ("Nike's blanket exemption policy, while
13   apposite, does not establish that common issues predominate[.]").  Conversely, although it often
14   requires individualized inquiries, raising the executive exemption as a defense does not "foreclose
15   the possibility of certification."  *Patel*, 2016 WL 1241777, at *7.  Instead, "courts must investigate
16   whether there are 'centralized rules … suggest[ing] a uniformity among employees that is
17   susceptible to common proof.'"  *Id.* (brackets as in *Patel*, quoting *In re Wells Fargo*, 571 F.3d at
18   958-59).

19       Ortiz also argues that Defendants created standardized procedures and processes to
20   implement a business model that values efficiency.  According to Ortiz, that business model
21   necessitates uniformity in a Level 4 Shift Manager's duties as well as the time spent on those
22   duties.  In contrast to a blanket exemption policy, "comprehensive uniform policies detailing job
23   duties and responsibilities carry great weight for certification purposes." *In re Wells Fargo*, 571
24   F.3d at 958.  For example, in *Wang V*, the court determined that all putative class members
25   worked at the same office with the same supervisors and assistants, and it determined they
26   implemented the same payroll procedures without discretion.  2014 WL 1712180, at *5.  The
27   court also rejected the defendant's arguments about exemptions because the class included only
28   non-exempt employees.  The court reasoned that it would not be required to examine "how much

14

time each individual employee spent in or out of the office [or] how the employee performed her job." *Id.*, 2014 WL 1712180, at *6.

In contrast, in *Patel* the court determined the plaintiff did not satisfy the predominance factor. The plaintiff challenged the defendant's ability to show the putative class members customarily and regularly exercised discretion in their jobs and cited to various employment manuals to support that argument. 2016 WL 1241777, at *7-*8. The defendant argued those manuals provided a "high level overview of expectations" and cited to declarations that showed employees were able to exercise discretion about implementing procedures. *Id.*, 2016 WL 1241777, at *9. Therefore, the court concluded the manuals and other policies were not sufficient to satisfy the predominance factor.

In this case, the Job Description sets forth "key duties" for Level 4 Shift Managers and does not expressly include the types of manual labor Ortiz and other putative class members claim to have performed. That document could be used as common proof to establish Defendants' realistic expectations for the position. *See Ramirez*, 20 Cal. 4th at 802. Citing a check list, Ortiz also contends that Defendants control "minute by minute" what tasks putative class members should perform during a shift. (Mot. at 3:12, citing Van Note Decl., ¶ 24 and Dkt. No. 136-10, Van Note Decl., Ex. W.) One of Defendants' witnesses was asked about the checklist at his deposition, and he testified it related to the Load Out Shift. (Maryott Decl., ¶ 4; Dkt. No. 166-3, Maryott Decl., Ex. C (Deposition of Nityanatha Vaidya ("Vaidya Depo.") at 150:12-152:3, 158:13-22).) However, there is a similar checklist for the Return to Station Shift. (Van Note Decl., Ex. W at AMZ-ORT 002022-23.) The record also suggests there is an "Amazon Way" and contains evidence that Defendants have created standard operating procedures. (*See, e.g.,* Job Description at 1; Van Note Reply Decl., ¶¶ 4, 6-7, Ex. B (Martin Depo. at 142:22-143:23), Ex. D (Hedin Depo. at 85:19-86:25); Ex. E (Ramirez Depo. at 113:14-115:11); Maryott Decl., ¶¶ 8, 10, Dkt. No. 161-18, Maryott Decl., Ex. G; Dkt. No. 161-20, Maryott Decl., Ex. I (Hedin Depo. at 63:5-24).)

Although this record demonstrates that Defendants may have created guidelines for Level 4 Shift Managers, "the fact that an employer expects employees to follow certain procedures or

15

perform certain tasks does not establish whether … they customarily and regularly exercise discretion and independent judgment." *Patel*, 2016 WL 1241777, at *9 (quoting *Marlo*, 639 F.3d at 948) (omitting internal brackets and quotations). As in the *Patel* case, Defendants' evidence also shows that although some checklists and standard operating procedures exist, Level 4 Shift Managers may have discretion on how to implement those procedures, including matters relating to employee discipline. (*See, e.g.,* Bourbon Decl., ¶¶ 4-5; Irvin Decl., ¶¶ 5-6; Jindal Decl., ¶¶ 3, 7-8; Troy Decl., ¶¶ 3-7.) The record also demonstrates that a Level 4 Shift Manager's duties can vary depending on the type of shift a class member covers and that processes may vary among facilities. (*See, e.g.,* Bourbon Decl., ¶; Irvin Decl., ¶ 2; Jindal, ¶ 2; Mootz. Decl., ¶¶ 2-9; Troy Decl., ¶ 2.) The Court concludes that the record demonstrates that individualized issues exist as to whether Level 4 Shift Managers regularly exercised discretion and judgment in how they performed their duties that would predominate over any common issues. *Cf. Patel*, 2016 WL 1241777, at *9 (concluding defendants' policies "'are just a piece of a far more complicated puzzle[,] and do not … provide a means of readily determining liability' for all putative class members") (quoting *Mies v. Sephora U.S.A.,* 234 Cal. App. 4th 967, 984 (2015)) (bracket and ellipsis as in *Patel*).

Ortiz also argues that "exempt" an "non-exempt" duties can be easily determined. The plaintiff in *Patel* raised a similar argument, which the court rejected because it "is the purpose of the work, rather than the status of the worker, that ultimately governs[.]" *Id.*, 2016 WL 1241777, at *11; *see also Heyen*, 216 Cal. App. 4th at 822, 826. In *Heyen*, the court noted that if tasks that would normally be considered "non-exempt" were taken to 'supervis[e] the employees or contribute to the smooth functioning of the department,'" they can be considered exempt work. 216 Cal. App. 4th at 822. "[I]f they were taken for some other reason, they were nonexempt work." *Id.* In *Patel,* the court concluded the plaintiff did not put forth class-wide evidence to establish the purpose of a given task. *Id.*, 2016 WL 1241777, at *11-12. It therefore determined that, "[a]t bottom, … this misclassification theory requires examining how [employees] spend their time in practice, and there is no common proof suggesting satisfaction of the element can be resolved with a 'yes' or 'no' answer across the class." *Id.*, 2016 WL 1241777, at *12.

16

Finally, Ortiz relies on the declarations from putative class members, as well as his own, to show Level 4 Shift Managers primarily engage in non-exempt activities. Given the size of the putative class, these declarations are not sufficient to establish anecdotal evidence that Level 4 Shift Managers are "primarily engaged" in non-exempt tasks. *Cf. Wal-Mart*, 564 U.S. 356-57.[16] Although these putative class members attest the "vast majority" or "most" of their time was spent on non-exempt duties, they fail to articulate the method they used to make those conclusions. (*See* Hedin Decl., ¶ 5; Merid Decl., ¶ 5; Martin Decl., ¶ 4; Lao Decl., ¶ 4.) Defendants' witnesses attest that they either rarely perform manual labor or, when they do, it is for a purpose that could render the tasks exempt. Like Ortiz's witnesses, they also fail to explain the methodology used to calculate time spent on exempt duties. (*See* Bourbon Decl., ¶¶ 6-10; Irvin Decl. ¶ 7; Jindal Decl., ¶¶ 6, 10; Mootz Decl., ¶ 11; Tang Decl., ¶¶ 5-6, 16; Troy Decl., ¶ 8; McConnell Decl., ¶¶ 13-14, 18-19; Ramirez Decl., ¶¶ 10-11, 14.) Therefore, on this record, the Court concludes it would be required to engage in individualized issues about whether Level 4 Shift Managers are primarily engaged in duties that meet the text of the executive exemption. *See, e.g., Sinohui*, 2016 WL 3475321, at *6 (concluding declarations submitted by plaintiffs were not sufficient to show common issues would predominate, in part, because they did not "provide any indication of 'how the managers calculated the percentages of their time spent on [their tasks]'") (quoting *Akasugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 252 (N.D. Cal. 2012) (brackets in *Sinohui*); *Patel*, 2016 WL 1241777, at *11-12.

Accordingly, the Court concludes Ortiz has failed to meet his burden to show that common issues relating to the executive exemption will predominate over the individualized issues described herein.

**2.     Superiority.**

To satisfy the superiority factor, Ortiz must show that "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Defendants argue Ortiz fails to present a trial plan and

---

[16] Unlike this case, the record in *Sinohui* included declarations from 54 of the 126 class members.

17

1   has not met his burden to show a class action would be manageable. The Court agrees. Ortiz
2   suggests the case can proceed in three phases, the first of which would be for the Court to grant
3   this motion. The next phase would be for the Court to "adjudicate the exempt/non-exempt
4   character of the [Level 4 Shift Managers'] job duties, just once, for all class members." (Mot. at
5   17:21-22.) However, the Court has determined that individualized issues on that factor, and other
6   factors relating to the executive exemption, will predominate. "[A] defense in which liability itself
7   is predicated on factual questions specific to individual claimants poses a much greater challenge
8   to manageability." *Duran v. U.S. Nat'l Bank Ass'n*, 59 Cal. 4th 1, 30 (2014) (emphasis in
9   original); *see also Sinohui*, 2016 WL 3475321, at *5.

10   Ortiz also argues the Court could identify the percentage of time class members spent on
11   each defined task to determine the amount of overtime owed by using any number of innovative
12   tools to make that determination, including the possibility of statistical sampling.[17] However,
13   Ortiz did not submit evidence to support the use of statistical sampling or any other evidence to
14   support his proposed plan. *See, e.g., Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir.
15   2014) (affirming class certification order and noting "district court carefully analyzed the specific
16   statistical methods proposed by plaintiffs" in its analysis).

17   For that reason, the Court concludes Ortiz has failed to meet his burden to show that a
18   class action is a superior method of resolving these claims. *Cf. Duran*, 59 Cal. 4th at 31 ("Rather
19   than accepting assurances that a statistical plan will eventually be developed, trial courts would be
20   well advised to obtain such a plan before deciding to certify a class action."); *Sinohui*, 2016 WL
21   3475321, at *8 n.4 (rejecting plaintiff's reliance on opinion that "random sampling could be used
22   to establish liability" where opinion amounted to no more than a generic proposal).
23   //
24   //

---

[17] In a footnote in his opening brief and briefly in his reply, Ortiz notes that Rule 23 authorizes a court, in certain cases, to certify issues, but he fails to identify which issues he believes would warrant that treatment in this case. To the extent Ortiz seeks alternative relief under Rule 23(c), the Court DENIES the request on the basis that he fails to meet his burden.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Ortiz's motion or class certification.

**IT IS SO ORDERED.**

Dated: April 27, 2020, *nunc pro tunc* to

April 13, 2020

_____
JEFFREY S. WHITE
United States District Judge